SCHUTZ et al. v. HARRIS et al.†

(Court of Civil Appeals of Texas. El Paso. May 30, 1912. On Motion for Rehearing, June 26, 1912.)

1. HUSBAND AND WIFE (§ 265*)—COMMUNITY PROPERTY.

Community land was assigned for the benefit of the husband's creditors, and the assignee contracted to sell to W., who relinquished his right to purchase, on H. agreeing to purchase in trust for the wife as her separate property to whom conveyance was made on her reimbursement of H. by means of borrowed money. Held, that the reacquired property became community property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 917–924; Dec. Dig. § 265.*]

2. TRUSTS (§ 63½*) — RESULTING TRUSTS — STATUTE OF FRAUDS.

If one takes a deed for the benefit of another lending or advancing the price to the latter, a trust results, but if the agreement is that the purchaser takes the deed and pays his own money, and that it may afterwards be repaid and the land redeemed by him who sets up the trust, the parol agreement does not constitute a trust, but is within the statute of frauds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 93; Dec. Dig. § 63½.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Max Schutz and another against W. J. Harris and others. Judgment for defendants, and plaintiffs appeal. · Affirmed.

R. V. Bowden, of El Paso, for appellants. Beall, Kemp & Parker and W. B. Ware, all of El Paso, for appellees.

PETICOLAS, J. In 1902 Max Schutz executed a general assignment of all of his property to W. H. Burges for the benefit of his creditors. Burges contracted to sell the real estate involved in this case as assignee to one Z. T. White, though no writing was executed between them. It is alleged: That prior to the making of any deed of conveyance to White, Max Schutz learned of said proposed sale, and requested his sister, Mrs. Harris, to purchase said real estate for him, which she agreed to do, and she and the plaintiff Max Schutz interviewed White with the view and purpose of having him relinquish his right to purchase said lands from the said Burges, and to permit the defendant, Mrs. Harris, to purchase same for the plaintiff Max Schutz. This the said White declined to do, but stated that, if Mrs. Harris would advance the money for the purchase of same for the plaintiff Louisa Schutz, he would relinquish his right to purchase same. It was then and there agreed between the defendant Mrs. Harris and the said White that she would advance the necessary money to pay the purchase price of said lands, and take the title thereto in her own name, and that said title should be held in trust for the plaintiff Louisa Schutz, Mrs. Harris to have the right to sell so much of said lands as might be necessary to repay to her such money as she had advanced, and what remained of said lands, after payment of said advances, should be conveyed to Louisa Schutz. That the said Mrs. Harris having agreed to such terms and conditions, White directed Burges to convey said lands to Mrs. Harris, which was done. By the terms of said agreement it was expressly agreed that the real estate should be held in trust for Louisa Schutz as her sole and separate property, and the same was to be conveyed to her by the defendant Mrs. Harris, when she had been repaid the sum so advanced by her for said lands. In 1909 a judgment was rendered for the defendants in a suit brought by Max Schutz founded on the above state of facts and in which he was the sole plaintiff. The petition in that case alleged substantially the above facts, but alleges that the purchase of the property was by Max Schutz and that Max Schutz procured the defendant Mrs. Harris to advance for him the purchase price of said lands. The suit which is on appeal here now was brought by Louisa Schutz, joined pro forma by her husband, Max Schutz, setting up the above facts and alleging that from them a resulting trust arose in said lands in her favor as her separate estate, and alleging that certain sales had been made, that Mrs. Harris had been more than repaid, and with appropriate prayers.

[1] There are but two defenses which it is necessary to mention. These were a plea of the statute of frauds, and a plea that the judgment in the suit brought by Max Schutz alone, which resulted in favor of the defendants, was res adjudicata of the matters involved in this case. The appellants excepted to the answer, the exceptions presenting the point that, the allegations of this petition showing the property to be the separate property of Louisa Schutz, the former judgment would not be res adjudicata. These exceptions the court overruled. Thereupon the plaintiff below admitted the facts in regard to the rendition of said prior judgment substantially as the defendants alleged them, whereupon the court rendered judgment in this case in favor of the defendants herein, holding that the plea of res adjudicata was good and constituted a complete bar to recovery by plaintiffs in this suit. Error is assigned to the action of the court in overruling the demurrers to the answer and to the judgment rendered by him upon said admission. Counsel for both parties present the case upon the theory that, if the facts alleged made the property the separate estate of Louisa Schutz, then that the prior adjudication was not res adjudicata; but that if, under the facts alleged, the property was the community property of Max and Louisa Schutz, then the plea of res adjudicata was properly sustained. It becomes unnecessary for us to decide whether, if the property was separate property of Louisa Schutz, the prior adjudication might not nevertheless be res adjudicata, because we reach the conclusion that the property became community property. In deference to the very earnest and able presentation of the case by appellants' attorneys, we are desirous of stating as clearly as is possible the reasons and authorities upon which we reach this conclusion.

As a preface thereto, it may be well to state, as we understand them, appellants' contentions. These are (a) that the facts, circumstances, and agreements surrounding and immediately preceding the conveyance from Burges to Mrs. Harris conclusively establish that the transaction was a gift by White, with the aid of Mrs. Harris, to Mrs. Schutz; (b) that there was no liability on Mrs. Schutz or her husband for the repayment of the money advanced by Mrs. Harris to buy the lands; that this was merely an advancement charged against the lands and to be repaid by the lands; (c) that the facts created a trust in the lands in favor of Mrs. Schutz as her separate property; (d) that the property became at once and continued to be the separate property of Mrs. Schutz; (e) that

the money advanced by Mrs. Harris never became a debt against either of the plaintiffs or their community estate, but was only a charge against the separate property of Louisa Schutz, created as such by gift. Both on reason and authority, we find ourselves unable to agree to these contentions. Stating first the reason and logic of the matter: It is apparent that the property was originally, before Max Schutz failed, community property. His purpose was to reacquire it after he had by assignment transferred it to Burges for the benefit of creditors. It is apparent that the wife joined in at least the wish to reacquire it. When White refused to relinquish his right to purchase in favor of the husband, but agreed to relinquish it in favor of the wife, it was so done with the husband's consent. Thereupon Mrs. Schutz, although perhaps the money never came into her manual possession, borrowed the money from Mrs. Harris with which to purchase the property. Money borrowed by the wife under these circumstances would seem to be community funds. This money paid for the land. Therefore the land was community.

[2] Again, it is elementarily stated, with regard to resulting trusts in land: "If the party who takes the deed lends or advances the price to the party who claims the benefit of it, so that the money paid actually belongs to the latter, a trust results; but if the agreement is that the purchaser takes the deed and pays his own money, and that it may afterwards be repaid and the land redeemed by him who sets up the trust, the parol agreement does not constitute a trust, but is within the statute of frauds." Brown on Statute of Frauds, 90. It follows, therefore, that, if a trust resulted from these facts, it must have so resulted because the money paid by Mrs. Harris at least constructively belonged to Mrs. Schutz. No matter what the allegations may state to the effect that this was merely an advancement, to be repaid by the lands, there must have been implied by the law a liability on the part of Mrs. Schutz, and, under the circumstances in this case, we feel certain, on the part of Mr. Schutz, to repay the money so advanced. The only theory on which the money used could be construed to be an advancement, with no liability as against the beneficiary, would be upon the theory that Mrs. Harris took the deed and paid her own money, with the agreement that it might afterwards be repaid by Mrs. Schutz. If such is the proper construction of the allegations in appellants' petition, then no resulting trust arises. If, on the other hand, the money is construed to have been loaned to Mrs. Schutz, it could not, under the circumstances of this case, be separate property. On either horn of this dilemma appellants fail.

It is contended, also, that White, having the right to purchase the land, had the power to make it separate property of Louisa Schutz. This we doubt. White had no written contract nor any written conveyance. He merely relinquished his parol option to buy. The conveyance to Mrs. Harris was made by Burges. Nothing was stated in that conveyance fixing either a resulting trust or that the property was the separate estate of Mrs. Schutz. As between White's power to stamp this property with the character of separate estate, and the effect of the acts and agreements of all the parties thereto, taken in their entirety, we believe that the acts and agreements of all the parties controlled, rather than White's wish, even if we assume that he desired to make a gift of it. The case of Hirshfeld v. Howard, 59 S. W. 55, seems to us decisive of the issues in this case. In the case cited community property incumbered by mortgage was purchased at foreclosure, under an agreement with the mortgagor's wife whereby the purchaser was to loan the purchase price, taking a deed in his own name. The mortgagor was so connected with the transaction as to be personally liable for the money advanced by the purchaser. In that case it was held that a resulting trust was fixed in favor of the community estate. The party lending the money testified: "I bought in the property at request of Mrs. Melasky. I should not have bought it only at her request." Judge Key says: "In order to show a resulting trust in favor of the separate estate of Mrs. Melasky, it was necessary to establish that the identical money paid out by Hirshfield, when he purchased the property, belonged to her separate estate."

In this instance, following that decision, it would be necessary to show that the money advanced by Mrs. Harris became by reason of the transactions the separate estate of Louisa Schutz, and, having become such separate estate, was used to purchase the property. Money borrowed by the wife is not acquired by gift, devise, or descent. Probably money might be borrowed by the wife under such circumstances as would make it her separate estate. But, taking into consideration the facts here present and the determinative reasons above indicated, as well as the case cited, we conclude that the money so borrowed became community funds and the land purchased with it became community property.

For the reasons indicated, the case is affirmed.

### On Motion for Rehearing.

In the opinion rendered in this case, it is stated that in 1909 a judgment was rendered for the defendants in a suit brought by Max Schutz in which case the petition alleged substantially the same facts as here present. Appellants move for correction of this statement in that in the former case brought

by Max Schutz alone no mention was made of Z. T. White or any agreement to purchase the property by him, nor is there any mention made of any agreement relating to Mrs. Schutz or by which she acquired any rights in the premises, but said petition simply alleges a loan of the purchase money to Max Schutz by Mrs. Harris, she to hold the title to the land as her security for the repayment to her of the money by Max Schutz.

We do not find any great difference between what appellants claim are the true facts and the facts which we stated in our original opinion, nor do we see that such change would make any difference in the result of the case; but, as the facts which we are moved to find are borne out by the record, we make these additional findings of fact, at the request of appellants.

The motion for rehearing, however, is overruled.