## NETTLES et ux. v. DOSS.
### No. 5402.

Court of Civil Appeals of Texas. Amarillo.
March 16, 1942.

Rehearing Denied April 13, 1942.

Benjamin Kucera, of Lubbock, for appellants.

E. A. Bills, of Littlefield, for appellee.

FOLLEY, Justice.

This suit was filed by the appellee, R. E. Doss, against the appellants, J. F. Nettles and wife, Lenna Nettles, in the nature of an action in trespass to try title involving a labor of land known as Labor No. 3 in League No. 208, Ochiltree County School Land situated in Bailey County. The appellants defended by a plea of not guilty and in a cross action asserted title by reason of an express or resulting trust, and further sought the cancellation of a quitclaim deed from appellants to the appellee, as will hereinafter more fully appear. After the introduction of the evidence in a trial before a jury, the court peremptorily directed a verdict in favor of the appellee and rendered judgment accordingly.

It appears that J. F. Nettles purchased the land in question in 1924 from Roscoe Rainwater, assuming a debt then outstanding against the land in favor of Ochiltree County School Fund in the sum of $2,151.-77, due in 1952, and also executing ten vendor's lien notes in favor of Rainwater, each in the sum of $500. Thereafter some of these notes were transferred to the First National Bank of Wichita Falls, and others to Sally R. Allingham. On April 25, 1938, while Nettles was delinquent on the indebtedness represented by these notes, judgment for debt and foreclosure was rendered in the District Court of Wilbarger County against him on this obligation and in favor of the Wichita bank and the heirs

of Sally R. Allingham, then deceased. The total amount of the judgment was $6,362.52. An order of sale was issued thereon and the Bailey County land sold at sheriff's sale to Oscar Flowers in September, 1938, for the sum of $500. On February 9, 1939, Flowers entered into a written contract with the appellee for the sale of the land to the appellee. The appellee assumed the Ochiltree County indebtedness, agreed to pay $1,158.88 in cash and to execute a vendor's lien note in favor of Flowers for $500. He also agreed to pay a commission of $100 to the real estate broker who negotiated the sale. Flowers executed a deed conveying the land to the appellee which was placed in escrow with other papers in the transaction pending the closing of the deal. On February 14, 1939, the appellants executed and delivered to the appellee a quitclaim deed which, for a consideration of $10, purportedly quitclaimed to him all of the interest of the appellants in the land. On the same day the appellee and Nettles entered into a lease contract for the year 1939 whereby Nettles rented the land from the appellee. About a year later a similar rental contract was made by the same parties for the land for 1940. Theretofore, on June 23, 1939, Oscar Flowers executed and delivered a correction deed in keeping with the sale contract, conveying the land to the appellee. It is uncontroverted that the appellee paid the $1,158.88 cash consideration and the $500 vendor's lien note executed by him. He also paid the $100 commission and some interest on the Ochiltree County debt, the amount thereof not being shown.

The appellants alleged that at the time of the entry of the judgment of foreclosure in the District Court of Wilbarger County, at the time of the issuance of the order of sale thereupon, and at the time of the sheriff's sale, there was pending a proceeding in bankruptcy in the District Court of the United States for the Northern District of Texas at Lubbock under what is commonly termed the Frazier-Lemke Act, 11 U.S.C.A. § 203, wherein the appellant, J. F. Nettles was the farmer-debtor; that after the foreclosure sale, and while the purchaser was threatening to dispossess the appellants, the appellant, J. F. Nettles, and the appellee entered into negotiations whereby appellee agreed to purchase the land from Flowers and hold the same for appellants until they might be able to make adjustment and settlement with their creditors; that in or-

der to secure the appellee in the transaction, the appellants agreed to quitclaim the land to him, which they did, and appellee, in turn, promised to reconvey the land to them when they were able to repay him the money which he had necessarily expended, with interest thereon; that appellee further agreed to reconvey the land to appellants when they were able to obtain a loan on the land sufficient to reimburse the appellee, or when they should be able to pay him from other sources; that in December, 1940, Nettles asked the appellee for a settlement and inquired of him the amount due; that Nettles was then and there ready and willing to pay appellee the amount due him, but appellee refused to submit the amount due and refused to make the reconveyance; and that by reason of such facts there existed an express or resulting trust between the parties whereby the appellants were entitled to a reconveyance of the land upon their paying the appellee the amount due him under the agreement, which amount they asked the court to determine and which they agreed to pay, asserting that they were ready and willing to pay the same. Based upon the above facts they further sought the cancellation of the quitclaim deed by reason of the alleged fraud of the appellee.

In support of their allegations relative to the pendency of the bankruptcy proceedings at the time of the Wilbarger County foreclosure and sale, the appellants offered two instruments in evidence which the court excluded, which action of the court is assigned as error. The first was a certified copy of an order of the District Court of the United States, Northern District of Texas at Lubbock, of the date of September 16, 1937, reinstating and reopening the bankruptcy proceedings of J. F. Nettles under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and re-referring such cause to the Conciliation Commissioner for Bailey County. The second was a certified copy of an order from the same court of the date of December 14, 1938, dismissing the bankruptcy proceedings. Both of these instruments were shown to have been filed and recorded in the Deed Records of Bailey County. Counsel for the parties in the instant suit had an agreement prior to the trial for the introduction of such instruments of record without filing certified copies in the case, and no objection to their introduction was made upon this theory. The substance of

the objection, which was sustained by the court, was to the effect that such instruments were immaterial, irrelevant and prejudicial and inadmissible because it was not shown what the proceedings were, what the petition of the debtor was, nor what his schedule contained. We are of the opinion that the instruments were not subject to the objections made and that under the record presented they should have been admitted in evidence. They were sufficient as a prima facie showing of the pendency in the bankruptcy court of Nettles' petition under the Frazier-Lemke Act, 11 U.S.C.A. § 203, at the time the foreclosure judgment was entered in the Wilbarger County suit, and at the time of the sheriff's sale thereunder. However, due to our other conclusions in this respect, we think the error is immaterial and harmless.

■ We recognize the rule that under the Frazier-Lemke Act Congress has vested in the bankruptcy courts in which the farmer-debtor's petition or answer is pending exclusive jurisdiction over the farmer and all his property, and has withdrawn from all other courts all power to maintain and enforce mortgage foreclosure proceedings without the consent of the bankruptcy court, and any foreclosure proceedings in any other court without such authority are unlawful and void and thus subject to collateral attack even though the issue of jurisdiction in the foreclosing court was neither contested nor raised by the farmer-debtor. Kalb et ux. v. Feuerstein et ux., 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370. In the case cited the Supreme Court of the United States has put at rest the controversy as to whether the stay of proceedings provided for in Section 75, sub. *o* and Section 75, sub. s of the Act, as amended, is a judicial or statutory stay, the latter interpretation prevailing. However, the opinion in that case did not fail to recognize the exception provided for in Section 75, sub. *o* to the effect that the stay might be avoided by obtaining the consent of the bankruptcy court after hearing as therein provided, and under such circumstances certainly the foreclosing court would have jurisdiction to proceed. There was no showing in the instant case as to whether or not such consent of the bankruptcy court was obtained, and, under the record before us, we think the burden of showing the absence of such consent rested upon the appellants. The appellee introduced in evidence the proceedings in the Wilbarg-er County foreclosure suit, which were regular in every respect and presumptively valid, and, with the deed from his grantor, thus made a prima facie showing of title in himself. In order to overcome the prima facie case made by the appellee, the appellants then sought to show the lack of jurisdiction of the foreclosing court. In this attempt they only offered proof to show the pendency of the bankruptcy proceedings at the time of the foreclosure and sale. No proof was offered by them to further show the absence of the consent of the bankruptcy court for the Wilbarger County proceedings. By reason of this omission we think the appellants have failed to show lack of jurisdiction in the foreclosing court, and the presumption of the regularity of the proceedings therein must prevail.

■ In view of our holdings above, we further conclude that appellee's prima facie proof of title, which was not overcome by the appellants, entitles him to recover unless there is some merit in the claims of the appellants relative to a parol trust. In this connection, we are of the opinion that no parol trust exists under this record. The pleadings and proof of the appellants go no further than to show that the appellee agreed to purchase the land with his own money and at some later date to reconvey the same to the appellants upon their repayment to him of the money he had necessarily expended in the transaction. As we view this case from the record presented, at the time of the purchase of the land by the appellee the appellants had no interest therein, nor did they furnish or become bound for any part of the purchase price paid by the appellee. The purported parol promise of the appellee was therefore without consideration, comes within the inhibition of the statute of frauds, and is unenforceable. Schutz et al. v. Harris et al., Tex.Civ.App., 149 S.W. 242, writ refused; Watkins v. Watkins, Tex.Civ.App., 141 S.W. 1047; Allen v. Allen et al., 101 Tex. 362, 107 S.W. 528; Lobban v. Wierhauser, Tex.Civ.App., 141 S.W.2d 384, writ refused; Friedsam v. Rose, Tex.Civ.App., 271 S.W. 417. There being no parol trust, it follows that the appellee should recover, and no jury issue having been presented, there was no error in the directed verdict.

In the disposition of this case, we do not wish to be understood as holding that the proceedings in the foreclosing court were

valid. We merely hold that in the trespass to try title action before us, their invalidity, if any, was not shown.

The judgment is affirmed.