## W. F. SORRELLS V. C. W. COFFIELD.

No. A-396. Decided May 9, 1945.
Rehearing overruled June 20, 1945.
(187 S. W., 2d Series, 980.)

· *T. R. Boone,* of Wichita Falls, and *Donald and Donald* and *Joe Cleveland, of Bowie,* for petitioner.

It was error for the Court of Civil Appeals to hold that the agreement in question, upon which the basis of this case rests, was made after the acquisition of the land, when the pleadings, the evidence and the findings of the jury show that it was made prior thereto. Thompson v. Schmidt, 274 S. W. 554; Nixon v. Hirschi, 136 S. W. (2d) 583; Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79.

*J. W. Chancellor, of Bowie, and Stine, Bunting & Stine,* of Henrietta, for respondents.

There being no trust and the alleged contract being in parol it was unenforcible under the statutes of fraud. Clarke v. Clarke, 46 S. W. (2d) 658; Bishop v. Japet, 171 S. W. 499; 10 Tex. Jur. 510.

MR. JUDGE BREWSTER, of the Commission of Appeals delivered the opinion for the Court.

W. F. Sorrells, petitioner, sued C. W. Coffield, respondent, seeking an adjudication that they were joint owners of certain land, the legal title to which was in Coffield. A trial court judgment for Sorrells, based on a jury verdict, was reversed by the court of civil appeals and rendered for Coffield. 183 S. W. (2d) 223.

Sorrells alleged that he and Coffield orally "entered into an agreement and former a partnership" for the purchase of 120 acres of land belonging to one Butler, the purchase price to be paid by Coffield but the land to be owned by them "as partners and jointly," with each owning an undivided 1/2 interest; that as a part of the agreement enough mineral interests in the land, were to be sold to repay Coffield what he paid for the land, and *after* such repayment they were to be joint owners of the land; that this agreement was made before any title was acquired from Butler; that he, Sorrells, then consummated a sale of the land by Butler for $1200, causing the deed to be excluded to Coffield, with the understanding that he and Coffield were joint owners and that Coffield was "the trustee of an express trust, holding the equitable title to 1/2" of the land for Sorrells; that by reason of the agreement they became partners both in the purchase and ownership of the land; that he, Sorrells, fully performed his part of the agreement, which services Coffield accepted under the prior understanding that his legal title was subject to Sorrells' equitable rights in 1/2 of the land; that Sorrells thereafter sold 1/4 of the minerals in the land for $1200, which was paid to Coffield, thereby reimbursing him for the purchase price paid for the land; that he then demanded of Coffield a deed to 1/2 of the land and 1/2 of the remaining mineral interest but that Coffield refused, thereby repudiating their partnership and trust agreement. He prayed that Coffield be adjudged to be trustee of an express trust as to his 1/2 interest in the land and minerals, and, in the alternative, that he have judgment vesting in him title to 1/2 the land and minerals, with an accounting, etc.

Coffield pleaded a general denial and specifically denied any partnership. Both by special exception and special plea he al-

leged that the agreement claimed by Sorrells was unenforceable under the statute of frauds.

We have studied the statement of facts for the testimony most favorable to Sorrells' version of his alleged agreement and found it in the testimony of Sorrells himself. In response to a question from his own counsel as to what Coffield said to him about buying the Butler land, Sorrells answered, "He said 'Do you think you could sell any part of the royalty and clear that place' and I said 'Yes, I believe I can' and he said 'If you think you can sell part of that royalty, up to half, so we would have half left and clear, I will pay the $1200.00 for that piece of land and then *what is left* we will split it jointly, own it jointly'." He further said that Coffield complained some time after buying the land, because the royalty had not been sold; that Coffield said, "Fred, I have carried this a long time and I am not going to split with you now;" that, in reply, "I told him I thought I was *still entitled to my part* of that *if I sold that royalty.*" Sorrells testified that after this attempted repudiation by Coffield, he, Sorrells, made an affidavit covering his claim to the land and filed it for record. That affidavit was introduced in evidence. In it appears this recitation: "That it was agreed between said parties that said land would be purchased and the deed taken in the name of C. W. Coffield but that said property should belong to the said C. W. Coffield and this deponent jointly * *; that it was understood between said parties that some interests of royalty or leases would be sold thereon and the purchase price advanced by the said C. W. Coffield repaid, *"after which the parties would own jointly* and participate on an equal basis." When asked, on cross examination, if the quoted part of the affidavit meant that the land, *"after Mr. Coffield was paid out,* would be half yours and half his," Sorrells replied, *"When he received his money back."* (Italics ours.)

Turning to the transcript, we find that Sorrells interposed no exception to the court's charge and requested no special issues. In that situation and evidently because of Sorrells' testimony, the first special issue submitted to the jury was: "Do you find from a preponderance of the evidence that an agreement was made by and between W. F. Sorrells and C. W. Coffield to the effect that C. W. Coffield furnish the purchase price of $1200.00 to purchase the 120 acres of land in question from H. C. Butler upon condition that *as and when a part of the minerals thereunder were sold* sufficient to repay the said C. W. Coffield therefor and that *such remaining interest* in said land, *if any, would be owned* jointly by W. F. Sorrells and

C. W. Coffield?" The jury answered "Yes." On other issues the jury found that the agreement was made before the Butler deed was executed; that Sorrells procured the Butler deed to Coffield pursuant to the agreement; that the agreement was never revoked by mutual consent of the parties; that Sorrells effected a sale of 30 acres of minerals under the land to a third party for $1200; and that the agreement was not conditioned on Sorrells "immediately and without waiting future oil development procuring a sale of a part of the minerals so as to reimburse C. W. Coffield." (Italics ours.)

Thus it is clear that Sorrells chose to try his case on the theory that he was to become a "joint owner" of the land *"as and when"* sufficient mineral interest was sold to reimburse Coffield, which, as Sorrells testified, might happen "in 10 years or ten days or twenty years or 20 days." So Sorrells' rights here must be measured within the limits which he thus set for himself. Safety Casualty Co. v. Wright, 138 Texas, 492, 160 S. W. (2d) 238, 245, and authorities there cited.

That portion of the English Act for the Prevention of Frauds and Perjuries declaring that all trusts in land must be evidenced by writing signed by the party declaring the trust was not included in our Statute of Frauds, Art. 3995, R. S. 1925. Therefore, such trusts may be proved by parol in Texas. James v. Fulcrod, 5 Texas, 512, 55 Am. Dec. 743, is an early illustrative case.

However, we impose definite limitations. Allen v. Allen, 101 Texas, 362, 107 S. W., 528, holds that the transaction cannot be proved if it conflicts with those sections of the Act which we did adopt. Other cases say that the transaction must be in harmony with general principles of law. In other words, a trust may arise only from an enforceable contract. Whittenburg et al v. Miller, 139 Texas, 586, 164 S. W. (2d) 497.

So, where one Peaden claimed he had taken title to certain minerals from one Dr. Clayton in trust for one Ancell and in support thereof testified, "George B. Ancell came to me and asked me to secure it for him upon the understanding that he would pay me, reimburse me, whatever amount I was out *if it was within reason,*" this court said: "Under our view not only was the evidence not clear, satisfactory and convincing but there is no evidence at all of the presence in the agreement of certain elements requisite to the creation of a parol trust. The weakness is not so much in the clarity of the evidence as it is

in its quality. A parol trust must be based upon a binding agreement made in advance of the acquisition of title. Ancell, Sr., did not obligate himself to reimburse Paeden the amount he might pay Dr. Clayton. The agreement to do so 'if it was within reason' is not a binding obligation and will not therefore support a parol trust." (Italics ours.) Clayton et al v. Ancell et al, 140 Texas, 441, 168 S. W. (2d) 230. And where the pleading and proof of the appellants went no further than to show that the appellee agreed to purchase the land with his own money and at some later date to reconvey it to them upon their repayment to him of the purchase price, there was no trust created. "As we view this case from the record presented at the time of the purchase of the land by the appellee the appellants had no interest therein, nor did they furnish or become bound for any part of the purchase price paid by the appellee. The purported parol promise of the appellee was therefore without consideration, comes within the inhibition of the statute of frauds, and is unenforceable." Nettles et ux v. Doss (Civ. App.), 161 S. W. (2d) 138 (er. ref.).

In this case Sorrells testified that he was "entitled to my part of that if I sold that royalty"; that the land would be half his "when he (Coffield) received his money back"; and that these things might happen "in 10 years or ten days or twenty years or 20 days." And, under that version, he could truthfully have added, "or never." The jury's finding was that he was to become invested with his equitable title "as and when" mineral interests were sold sufficient to reimburse Coffield. Clearly, therefore, the alleged agreement was wholly wanting in mutality in that Sorrells was in no sense legally bound to perform, since that he might perform in "10 years or ten days or twenty years or 20 days" necessarily meant also that he was not bound ever to perform unless he elected to do so. So, under authority of Clayton et al v. Ancell et al and Nettles et ux v. Doss, supra, and the cases therein cited, we hold that the agreement was unenforceable under the statute of frauds.

This conclusion renders it unnecessary to consider other propositions presented by this appeal.

The judgment of the court of civil appeals is affirmed.

Opinion adopted by the Supreme Court May 9, 1945.

Rehearing overruled June 20, 1945.