**GARCIA v. GARCIA DE ORTIZ et al.**

No. 12541.

Court of Civil Appeals of Texas.

San Antonio.

April 29, 1953.

Laurie M. Huck, San Antonio, for appellant.

M. J. Raymond and Gordon Gibson, Laredo, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Amador E. Garcia as plaintiff against his five sisters and three husbands of the three sisters who now have living husbands, seeking to recover a one-sixth undivided interest in approximately 10,000 acres of land situated in Webb County, Texas.

The basis upon which plaintiff seeks a recovery is an alleged parol trust. The defendants filed a motion for summary judgment under the provisions of Rule 166–A, Texas Rules of Civil Procedure, which was opposed by plaintiff.

The trial court granted defendants' motion for summary judgment that plaintiff take nothing and Amador E. Garcia has prosecuted this appeal.

It appears that in about the year 1910 appellant went into the cattle business with his father, Eusebia Garcia. The father owned or acquired about 10,000 acres of land located in Webb County, where they carried on their cattle business. As a result of this business they acquired a large fortune. However, during the depression of 1929 and the following years, they got into very serious financial difficulties and owed the Laredo National Bank (hereinafter referred to as Bank) large sums of money, secured by liens upon the above mentioned land.

The Bank instituted foreclosure proceedings and ultimately had the property sold at sheriff's sale, at which sale the Bank bought in the property and received a sheriff's deed to same, dated June 2, 1936. On the same day appellant's five sisters, who are appellees herein (four of them being joined by their husbands and one being a spinster), executed a vendor's lien note for the full amount of the indebtedness held by the Bank, being the sum of $49,625.93, and the five sisters received in return from the Bank a quit-claim deed to the 10,000 acres of land. In this deed the Bank reserved the mineral rights, but in a second quit-claim deed, executed by the Bank about eighteen months later, the mineral rights were also conveyed to the five sisters. The five sisters (the married ones, joined by their husbands) also executed a deed of trust conveying the 10,000 acres of land, togther with other lands, to B. M. Alexander as trustee to secure the Bank in the payment of the $49,625.93 vendor's lien note given to the Bank. This indebtedness has since been paid off.

Appellant alleges that at the time the foreclosure was had, an agreement was entered into between the Bank, his father and brother-in-law J. B. DaCamara, Jr., and himself, to the effect that if he would not resist the foreclosure, the Bank would buy in the land and convey it to his five sisters, in consideration of their signing a vendor's lien note in the aggregate sum due the Bank, and that if and when this indebtedness was paid off by revenue derived from the land, the land being oil producing land, the five sisters would convey a one-sixth undivided interest in the 10,000 acres of land to appellant, and that thus a parol trust was created in his favor to a one-sixth undivided interest in the land.

Besides the pleadings in the case, there is an affidavit made by appellant, another by Gordon Gibson, Esq., and another by the five sisters, and there are copies of certain deeds of trust and quit-claim deeds.

The affidavit made by Gordon Gibson, Esq., omitting formal parts, reads as follows:

"I, Gordon Gibson, of the City of Laredo, County of Webb and State of

Texas, being duly sworn, make oath and say that:—

"1. I am a practicing attorney of the Laredo, Texas, Bar; in the years 1936 and 1937 I was general attorney for the Laredo National Bank of Laredo, Texas, and attorney of record for said bank in the proceedings by which it acquired title to the real property in question in this action; that I was personally present at practically all, if not all, discussions between B. M. Alexander, President of said Bank, and J. B. DaCamara, Jr., and other interested parties, when arrangements were made for the sale and conveyance of said property to defendants; I drew all papers, agreements, deeds, deeds of trust and note involved in such sale and conveyance by the bank to defendants and J. B. DaCamara, Jr., and supervised the execution and delivery of them.

"2. No such agreement as is alleged by plaintiff in Paragraph VI and VIII of his petition was made, and no such condition as is alleged by plaintiff was attached by the Laredo National Bank to the delivery of the deeds to such property to defendants and delivery of such deeds by the Laredo National Bank to defendants was absolute and unconditional."

Appellant's controverting affidavit, omitting formal parts, states:

"That he is plaintiff in the above suit;

"That he and defendants did in fact agree between themselves that the lands described in plaintiff's petition would be foreclosed upon to satisfy the liens thereon, but that immediately upon the foreclosure and sale thereof by such foreclosure, that title was to be re-vested in defendants; that pursuant to such plan title was so re-vested in defendants;

"That defendants, and plaintiff's father, Eusebio Garcia, and J. B. DaCamara, Jr., plaintiff's brother-in-law, insisted that plaintiff cooperate in such proceedings and refrain from contesting same, representing that said lands would be re-acquired by defendants, for the same indebtednesses, for the benefit of defendants and plaintiff; that such proceeding was for the benefit of plaintiff as well as defendants, and would enable said lands to be salvaged and saved for the benefit of plaintiff and defendants, and that the interest of plaintiff, to-wit, a one-sixth interest, would be held by defendants in trust for plaintiff until said indebtednesses were paid;

"That plaintiff, relying upon such representations and promises, did cooperate as requested, and gave up valuable partnership interests therein with his said father; and also signed division orders releasing oil payments under said lands to be used for the payment of said indebtednesses; and plaintiff did every act and thing requested by defendants, relying upon said representations that plaintiff's interest in such lands would thereby be preserved;

"That by virtue thereof defendants acquired title to said lands, in accordance with said representations, but that defendants, in law and in fact, hold said lands *in trust*, for the benefit of plaintiff as well as themselves, as alleged in plaintiff's petition;

"That defendants were then, and still are, acting in a fiduciary relationship to plaintiff;

"That affiant does not know whether attorney Gordon Gibson knew of the facts or not, but whether he did or did not is not material, because the knowledge or lack of knowledge of the said Laredo National Bank of the agreement between plaintiff and defendants is not material and does not affect the trust relationship between plaintiff and defendants; that said Gibson's denial of the agreement between plaintiff and defendants is not true or correct.

"That the trust relationship between plaintiff and defendants for the admin-

istration of said property and plaintiff's interest therein still exists, and the said agreement between said parties is still effective, notwithstanding defendants' and attorney Gibson's denials and affidavits to the contrary; that responsible officials of said bank did know of said plan and agreement, whether such knowledge be material or not;

"That the properties involved herein were acquired by defendants, pursuant to said representations made to plaintiff, and said defendants now hold title thereto, in trust, for the benefit of themselves and plaintiff, being all of the children of Eusebio Garcia."

The affidavit of the five sisters denied that they ever agreed to convey a one-sixth undivided interest in the land to their brother Amador, appellant herein.

Demand for admission of facts and of genuineness of documents, Rule 169, T.R.C.P., was made but the answers shed no light upon the situation here.

The purpose of a summary judgment hearing, under the provisions of Rule 166–A, T.R.C.P., is to find out if there exists in the cause any disputed genuine issue or issues as to a material fact, and is not for the purpose of hearing and determining such disputed genuine issues of fact, if any are found to exist. Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236; Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422; De la Garza v. Ryals, Tex.Civ.App., 239 S.W.2d 854. Therefore, we are not here called upon to decide any disputed issues of fact of a material nature, if they do exist, but, rather, to determine from the pleadings, the affidavits and other instruments introduced in evidence, whether such disputed material fact issues exist.

The only parol trust attempted to be plead by appellant is an expressed one. There are no allegations of fraud, accident, or mistake, which could bring about a constructive trust, and no allegations that appellant was to pay any part of the money for the redemption of the land which might bring about a resulting trust. 44 Tex.Jur. 611, § 10; 44 Tex.Jur. 635, § 34; 44 Tex. Jur. 649, § 45.

The transaction involved herein occurred in 1936, before the passage of the Texas Trust Act, Art. 7425b, Vernon's Ann. Civ.Stats., in 1943, and therefore this act has no application here. An expressed trust in land must now be in writing. Art. 7425b–7, Vernon's Ann.Civ.Stats.

Appellant in his pleadings affirmatively states that he owed large sums of money which he was unable to pay. However, he contends that he did not enter into this agreement to defraud or delay his creditors, because the plan was initiated by the Bank and, in effect, that he was helpless to do anything but yield to the demands of the Bank. But Gordon Gibson, the general attorney for the Bank at the time of the transaction, made an affidavit that there was no such agreement with the Bank as was alleged by appellant. Appellant then filed an affidavit in which he seemed to abandon the idea that the Bank initiated the plan or was even a party to the plan, and said only that some responsible officers of the Bank knew of the plan. He speaks of clearing the land by a foreclosure, and also speaks of the fact that the land was deeded to his five sisters, stating that he was not included in the deed because the Bank was afraid that it might be harassed by his creditors. That he was confronted with foreclosure and threats of foreclosure and abstracts of judgment, and that he was unable at the time to pay his debts. All of these statements, some of which were made in his affidavit and some in his pleadings, were binding upon appellant and tend strongly to indicate that the plan had the effect of defrauding or delaying his creditors, and regardless of whether or not this was his intention, it had that effect and was an illegal arrangement and one which a court of equity would not enforce. 20 Tex.Jur. 462, § 103; Bramlett v. Jenkins, Tex.Civ.App., 231 S.W.2d 539; 20 Tex.Jur. 401, § 43, and p. 416, § 58.

Appellant, in his affidavit, asserts that his sisters, by accepting the deed from the Bank conveying to them the 10,000 acres, agreed to the plan that they were thereafter obligated to convey to him his one-sixth interest in the property. The

sisters, joined by their husbands, denied under oath that they had ever entered into such an agreement. In his affidavit appellant goes no further than to state that his sisters did agree to the plan. It is plain from the record that appellant did not agree to pay any part of the consideration for the purchase of the land from the Bank. He contends that if, as and when the revenues from the property had liquidated the indebtedness to the Bank he was to receive his one-sixth interest in the land. This does not constitute any agreement on his part to pay any part of the purchase price for the land. He does say that he signed waivers on oil royalties that they might be applied upon the indebtedness, but the record fails to show that he had any interest in these oil royalties. The record shows that the Bank conveyed this property to appellees herein for a consideration of $49,625.93; that the appellees and J. B. DaCamara, Jr., now deceased, signed a vendor's lien note in the sum of $49,625.93, agreeing unqualifiedly to pay that amount for the land, and further giving a deed of trust, not only on the land conveyed to them by the Bank but also on other lands owned by them, as security for the payment of this consideration. There is no contention that this was not a valuable and adequate consideration for the land. Appellant does not contend that, under any circumstances or in any way, he was to be responsible for any part of this consideration. Under these circumstances there was no consideration to support the expressed trust in appellant's favor for one-sixth of the land conveyed to appellees and J. B. DaCamara, Jr. The only possible consideration urged by him is that he gave up his right to contest the foreclosure proceedings because the Bank, his father and J. B. DaCamara, Jr., demanded that he do so, and promised that the land, after it had been cleared of its debts, would be conveyed to him, that is, a one-sixth interest therein. But appellant does not say that at that time the appellees made any such agreement. It is a fair deduction from the record as it now stands, that it is an undisputed fact that the Bank had a perfect right to maintain the foreclosure proceedings against the 10,000 acres of land, and that appellant was helpless to prevent it in any way. If he had means to prevent such foreclosure, he should have set them out in his affidavit. Under the record, he gave up his right to resist that which he had no power to resist and, therefore, such forebearance did not constitute a valuable consideration. Foster v. Ross, 33 Tex.Civ.App. 615, 77 S. W. 990.

The appellant having failed to show in his affidavit, that the Bank agreed to the plan of foreclosure, the sale to his sisters, and later a conveyance of one-sixth of the property to him, the judgment of foreclosure and the sheriff's sale of the property divested appellant of any semblance of title to the land, which he theretofore might have had, and the Bank became the owner of both the equitable and legal title to the 10,000 acres. The Bank conveyed this property to appellant's sisters and their husbands for a consideration of $49,625.93, evidenced by a vendor's lien note, signed not only by the sisters but also by their husbands, the payment of which was secured by a vendor's lien against the land, and the sisters and their husbands further executed a deed of trust to B. M. Alexander as trustee for the benefit of the Bank, not only on the 10,000 acres conveyed to them by the Bank, but also on other land owned by them. By this transaction the sisters and their husbands became unqualifiedly bound to pay said $49,625.93, or lose not only the 10,000 acres conveyed to them by the Bank, but also the other land which they had conveyed in trust. As before stated, appellant never agreed to become responsible for any part of this consideration, or to pay any part of it at any time or under any circumstances, his contention being, that the revenues from the land would be looked to, as far as he was concerned, for the payment of this consideration. When the Bank foreclosed its mortgage and bought the property at the sheriff's sale, it acquired not only the legal, but also the equitable title to this land, and at that time the appellant owned no interest, either legal or equitable, in the land. Therefore, he had only a naked promise from his sisters, that

if, as and when the revenues from the land had reimbursed them for the full amount of this consideration, then and in that event they would convey to him a one-sixth interest in the land. The statute of frauds, Art. 3995, subd. 4, applies to such an agreement. Appellant did not own any interest in the land, and he never agreed to be bound for any part of the consideration for the purchase of the land. Under such circumstances there was no expressed parol trust to a one-sixth interest in the land created in favor of appellant. Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885; Lobban v. Wierhauser, Tex.Civ.App., 141 S.W.2d 384; Frank v. Gaffney, Tex.Civ. App., 2 S.W.2d 885; Friedsam v. Rose, Tex.Civ.App., 271 S.W. 417; Nettles v. Doss, Tex.Civ.App., 161 S.W.2d 138; Sorrells v. Coffield, 144 Tex. 31, 187 S.W.2d 980; 43 Tex.Jur. 37, § 19.

■ Appellant is here attempting to engraft a parol trust on the deed from the Bank to appellees and J. B. DaCamara, Jr. That conveyance was based upon a contractual consideration, and to permit appellant to engraft a parol trust on this deed would be to permit him to vary the terms of the deed itself by parol evidence. This cannot be done. Kidd v. Young, 144 Tex. 322, 190 S.W.2d 65; Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972; Johnson v. Black, Tex.Civ.App., 197 S.W. 2d 523; Republic Nat. Bank of Dallas v. Collins, Tex.Civ.App., 254 S.W.2d 406, affirmed, Collins v. Republic National Bank, Tex.Sup., 258 S.W.2d 305.

In this very recent case the Supreme Court said:

"The Court of Civil Appeals decided and we think correctly so, that the consideration in the deed from Standfield to Nelson being contractual in nature, parol testimony was not admissible to vary the express terms of the deed, in the absence of fraud, accident or mistake, and that, therefore, petitioners were not entitled to recover."

Accordingly, the judgment of the trial court is affirmed.