**J. C. BURCH et al., Appellants,**

v.

**B. N. NABORS EXCAVATING & DEMOLITION, INC., et al., Appellees.**

No. 17053.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 17, 1969.

Rehearing Denied Nov. 21, 1969.

Pat Coon, Dallas, for appellants.

Jack Barton, City Atty., W. Ralph Mann, Asst. City Atty., and George Hopkins, Denton, for appellees.

## OPINION

MASSEY, Chief Justice.

The question to be determined on appeal, simply stated, is whether the City of Denton, hereinafter termed defendant, rightfully received the summary judgment obtained, granting declaratory relief against J. C. Burch and R. B. Shannon, hereinafter termed plaintiffs. We have concluded that the summary judgment received by the aforesaid city is to be affirmed.

In 1925 defendant's predecessor in title desired to build a brick building in Denton, one wall of which would extend beyond the property line of its lot. To do so a contract was made with the predecessors of plaintiffs, who did not at such time desire to build on their lot but obviously contemplated that such might be done at some future date. It was agreed that construction should proceed with accompanying erec-

tion of one wall of the building to extend six or seven inches over onto the adjacent property of plaintiffs' predecessors. A like number of inches of the wall would be on the lot of defendant's predecessor with the plaintiffs' predecessors yielding up an easement on their lot for the purpose. It was contemplated that the wall would probably become a "party wall". With such in mind the parties agreed that in all fairness defendant's predecessor would initially pay the full cost of its construction with an obligation to pend whereby if and in the event plaintiffs' predecessors desired at a later time to construct their own building and to use the wall they would be obliged to pay one-half of the original cost of its construction.

Defendant's predecessor took the precaution to have a written instrument drawn to evidence its easement right, and at the same time to eliminate the possibility that its neighbor might claim the right to use the wall as a "party wall" without paying the prescribed one-half of the cost of its erection.

Though not filed at the time, this instrument was prepared and executed by all parties in which their purpose was expressed. There being no question but that defendant's predecessor acquired an easement in the adjacent property our consideration will primarily be directed to the question of what was acquired in exchange by plaintiffs' predecessors.

One paragraph of the instrument recited, as follows: "It is understood that it is the purpose of this contract to give the owner of either of said lots the privilege of constructing any character of building they see fit, on their lot, so that the wall on said line shall be a party wall and the other party shall have the right to pay one half the cost of (the) constructing of the portion of such wall he seeks to use and become the owner of an undivided one-half interest in such wall to the extent that he has paid therefor."

Another paragraph read, as follows: " * * * at any time the party of the second part (plaintiffs' predecessors) desires to build a brick business house on the portion of his lot adjacent to said wall he shall have the privilege of paying to the parties of the first part (defendant's predecessor) one-half the cost of the portion of said wall used by party of the second part and he shall then be permitted to connect his building therewith and said wall to the extent of the portion so used shall become a party wall and be owned jointly by the parties. * * * "

Another paragraph read, as follows: "It is further understood that this agreement shall run with the land and shall enure to the benefit of and be binding upon the parties hereto, their heirs and assigns."

There was a succession in the titles to both parcels of adjacent property, culminating in plaintiffs and the defendant. The defendant became the owner of the lot on which the building had been erected in 1925, and the plaintiffs became the owners of the other lot, on which no building such as contemplated by the agreement was ever erected.

In early 1968 the defendant decided to raze the building on its lot. Pursuant thereto the defendant intended to and did begin demolishing the wall which had been the subject of the contract. Plaintiffs placed such contract on record and served notice thereof upon the defendant prior to the time of defendant's demolition operations. After they were begun the plaintiffs brought suit for damages and to enjoin further demolition procedures. Work ceased. It is apparent that any future demolition is dependent upon the outcome of this litigation. The summary judgment of the trial court declared that plaintiffs have no interest entitling them either to damages for destruction of the wall or to an injunction to prevent its destruction.

There appears to be no Texas case which has applied what we consider settled

principles of law to a similar situation, i. e., involving destruction of a wall as to which there was a dispute of whether its character was that of a "party wall", with dispute of the existence or nonexistence of the reciprocal easements attendant thereto. Counsel discuss McCormick v. Stoneheart, 195 S.W. 883 (Amarillo Tex.Civ.App., 1917, error refused), and Conner v. Joy, 150 S.W. 485 (Fort Worth Tex.Civ.App., 1912, no writ hist.). Though these cases contain discussion of applicable legal principles there was in neither of them presented the question of right to destroy, or right to damages, in an analogous situation.

Consideration given to the discussion in such cases, along with a consideration of the chapters in Tex.Jur.2d on "Party Walls" and in C.J.S. on "Party Walls"; in 21 Tex. Jur.2d p. 136, "Easements", Sec. 15, "Effect of statute of frauds"; in the authorities referred to at page 881 of McCaleb v. Wyatt, 257 S.W.2d 880 (Fort Worth Tex. Civ.App., 1953, writ ref., n. r. e.); in the sections relative to Perpetuities and to Remedies of Optionee found in James on Option Contracts; in Coffield v. Sorrells, 183 S.W.2d 223 (Fort Worth Tex.Civ.App., 1944, affirmed at 144 Tex. 31, 187 S.W.2d 980); in 70 C.J.S. Perpetuities § 4, p. 587, et seq., Rule against Perpetuities—Period of Postponement of Vesting, and following sections, particularly Secs. 5 to 13, inclusive; and in 73 C.J.S. Property § 13, p. 180, Ownership and Incidents Thereof,— has lead us to the conclusions hereinafter expressed.

In view of the contract of the parties the plaintiffs never acquired an interest, as an easement, in the real property of the defendant. What plaintiffs received, pursuant to contract, was the right to acquire such an interest if they desired such. In other words they possessed, as consideration received from the defendant, an option to purchase by a prescribed action a right which when purchased would carry with it, as incident thereto, an easement in the realty of the defendant. Even if a purchase was effected, as prescribed, the wall would not become a "party wall" until there was a subsequent use thereof as such.

The defendant, on the other hand, did acquire an easement in the plaintiffs' realty. Such was the consideration it received from plaintiffs in exchange for the right, contingent and conditional, given plaintiffs as their consideration. Of course, the defendant's interest in the realty of plaintiffs was for a specific purpose and terminable through operation of law when necessity therefor ceased to be applicable for the purpose. In other words the defendant's easement in the plaintiffs' land would have ceased to exist if defendant had completed razing the wall. In what is stated in this paragraph we have ignored any question of plaintiffs' rights to enforce specific performance.

Though, as indicated, plaintiffs never acquired any title or interest in the defendant's realty it is likewise obvious that if the contrary were the case such interest would have ceased if defendant had completed the destruction of the wall without complaint. It was upon the mistaken belief that they had such an interest in the defendant's property that plaintiffs' entire case is predicated. In other words their claim is that they possess an easement in the property of the defendant which has value; that because they have the right they can either prevent action by or in behalf of the defendant in destroying their easement right—or can exact damages of the defendant as the price chargeable upon granting permission for such destruction.

 There are several reasons why the plaintiffs have lost their case. One is because they never acquired an easement in the realty of the defendant. Another is because they never tendered performance, as contemplated by the contract, conditioned upon which the coming into existence of such an easement was contractually provided. Another was because the contract purported to violate the Rule Against

Perpetuities, in that it contained no time limitation for vestiture of title since by its provisions the purported option right of the plaintiffs might continue in existence, without vesting, for longer than twenty-one years plus the period of gestation. In that connection even if plaintiffs had tendered the performance contemplated by the contract the defendant would have been at liberty to refuse it and to deny plaintiffs a right to make the wall a "party wall".

In our discussion, hereinabove, we have ignored one circumstance which the plaintiffs insist is of importance and which in and of itself renders the judgment reversible on appeal. We now consider it.

In the joint affidavit of plaintiffs which was filed in support of their opposition to the Defendant's Motion for Summary Judgment they swore, as follows: "Subsequent to the execution of the party wall agreement dated the 23rd day of September, 1925, entered into by our predecessor in title, we both, J. C. BURCH and R. B. SHANNON gave valuable consideration to Mr. and Mrs. T. R. Brooks also successor in title to such party wall agreement, for an interest in and right of use for said wall, the subject of this suit.

"To evidence the receipt of the giving up of such consideration by J. C. BURCH and R. B. SHANNON, Mr. and Mrs. T. R. Brooks executed their signatures upon such party wall agreement and did thereafter recognize the right of J. C. BURCH and R. B. SHANNON to use said party wall and their interests in the right to use said party wall."

In such connection it is apparent from the instrument placed on file that at some time subsequent to the original execution of the instrument in 1925 Mr. and Mrs. Brooks, in the character of defendant's predecessor, had written their signatures in above the signature of its predecessor who originally executed the instrument.

In the deposition of one of the plaintiffs, taken at the instance of the defendant, there was testimony that while no money (such as contemplated by the contract) had been delivered by or on behalf of the plaintiffs as consideration for rights under the contract, yet there had been a delivery of acceptable "consideration" in substitution thereof to defendant's predecessor. There was no explanation or elaboration. Necessarily implied, say plaintiffs, was evidence that there had been such performance by them as demonstrated that an easement in the defendant's realty had become vested in them. At least, they insist, the existence of a fact issue was thereby demonstrated.

We overrule the contention. The plaintiffs' rights under the instrument was in no way enlarged by the Brooks' signatures. Right under the contract of the original parties has not become enlarged as applied to any successor in interest of either of such parties. Defendant established the absence of delivery of that consideration recited by the contract as the condition upon which investiture of title in plaintiffs was made to depend. Plaintiffs neither countered by showing the identity of what was mentioned in the evidence as the substituted "consideration" delivered by plaintiffs,—that it was accepted as such,—nor that there was any other or substituted written instrument operative so as to invest title in them in satisfaction of the Statute of Frauds (not here involved as not plead). To show such as factual, rather than by way of merely presenting their own legal conclusion unsupported by any fact upon which their conclusion was founded, became the burden of the plaintiffs on the hearing of the Defendant's Motion for Summary Judgment. The burden was not discharged, hence entry of judgment for the defendant was proper.

Affirmed.