Hemphill, Ch. J.
The exclusion of a portion of Mrs. Madden’s testimony and of certain averments of the answer will be considered together. The evidence would have supported these allegations had they been permitted to stand; but being rejected, there was no error in the exclusion of the testimony. On considering the point presented I will barely premise that the transaction between the defendant and the deceased has manifestly been regarded by the parties, their counsel, and the court below, and has been discussed here by counsel, as if it were unaffected by the principles of Spanish jurisprudence, and as controlled by the common law, witli its statutory modifications; and I purpose, in the investigation, to subject it to the like test.
It seems, then, now to be beyond questiou that parol evidence is admissible to prove that a deed or instrument, absolute on its face, was executed and delivered upon certain trusts, not reduced to writing, and which the grantee promised to perform, and that the same may be established. In Carter v. Carter, 5 Tex. R., it is said to be the settled doctrine that a deed absolute on its face will be valid and effectual as a mortgage between the parties if it was intended by them to be a security for a debt; that the character of the conveyance will bo determined by the clear and certain intention of the parties, and that parol evidence is admissible to show what that intentiou really was. The same principle was ruled in Stamper v. Johnson, 3 Tex. R. In Bishop’s Heirs v. The Adm’r and Heirs of Bishop, 13 Ala. R., N. S., 475, it is hold to be beyond doubt that, though a deed or bill of sale be absolute on its face, parol proof may be received that it was intended as a mortgage, or that it was executed and delivered upon certain trusts not reduced to writing but existing in parol, and which the grantee or donor promised to perform, and that these trusts may be shown by parol proof, and a court of equity will decree their execution ; and in support of these positions reference was made to Kennedy’s Heirs v. Kennedy’s Heirs, 2 Ala. R., 589, and Sledge v. Clopton, 6 Ala. R. The ground for the admission of such evidence is, that wrong, through mistake, surprise, or fraud, may not be perpetrated.
The trust existing in parol is established t.o prevent the fraudulent use of the deed or written instrument; for, in the language of the court in the case cited, though there be no fraud in the execution of the deed, yet if it be after-wards converted to a fraudulent purpose, or to one wholly different from that intended by both parties at the time of its execution, equity ought to interpose and prevent such an improper use and establish the trust for which it was executed. Questions in relation to the proof and enforcement of trusts and confidences created by parol, on the execution of written instruments, have not so frequently arisen as on the admissibility of parol evidence to establish that a deed is not, as it purports on its face, absolute but only conditional, and intended as a mere security for a debt. But the admission of such evidence *99 in both cases rests on the same principle. If admissible in one, it cannot be excluded in the other; and if sufficient to establish the fact in either case, it must be followed by its corresponding legal effect.
Upon the same principle or basis is founded the rule which enjoins the specific performance of any promise by which another is prevented from performing an intended act, or through which he omits to make certain arrangements, provisions, or gifts, by will or otherwise, for other persons. Such provisions are enforced, though they constitute a parol creation of a trust contrary to the statute of frauds, for it would be a fraud upon others to permit the promissors to derive a benefit from such breach of duty or obligation. Thus, for example, where an executor promised a testator to pay a legacy, and told the testator he need not put it into his will, he was decreed specifically to perform it, (2 Ves. and B., 262; 11 Ves., 638;) or where a testator was about altering his will for fear that there would not be assets sufficient to pay all the legacies, and his heir at law persuaded him not to alter it, promising to pay all the legacies, he was decreed specifically to perform his promise. (2 Story, Eq., § 781, and cases cited.) No distinction can be drawn between the force of an obligation or promise by which the execution of a deed or will in favor of another has been prevented and that of a promise ou the faith of which a deed or will has been executed. If one creates a legal trust or charge, so must the other. One lias prevented a deed or will from being executed in favor of a third person, and the other has induced its execution; and the beneficiaries of each are equally entitled to a specific performance of the respective promises, and the breach of the obligation in either case is alike injurious and fraudulent on third parties. (13 Ala'. It.. 484.)
I have hitherto examined this point as if the statute of frauds and perjuries of 29 C., 2 c. 3, or one containing similar provisions in relation to the creation and proof of trusts in lands was in force in this State. But such is not the fact. There is no provision in our statutes similar to that found in the 7th section of the statute of frauds and perjuries, which enacts that all declarations or creations of trusts and confidences of any lands or tenements or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust or by his last will in writing. From this provision resulting or implied trusts are excepted; and it is further declared, section 9th, that all assignments of trusts or confidences shall be in writing. No such statutory provisions are in force in this State. The declaration or creation of trusts stands in this State as it did at common law in England before the passage of the statute of frauds and perjuries. This subject was considered in the case of James v. Fulcrod, decided at Galveston, Jan. Term, 1851, (5 Tex. R., 512,) and it was there held that the only contract in relation to lands which was required to be in writing by the statute of frauds and fraudulent conveyances was the contract for their sale; that express trusts in relation to lands stand upon the same footing with implied or constructive trusts; that the facts from which resulting trusts arise and the special contracts by which express trusts are created may alike be proved by parol evidence. If, then, in statutes which declare that all trusts and confidences of land not expressed in writing shall be utterly void and of no effect — such trusts, though created by parol, are enforced upon the ground that by such action the object of the statutes, viz, the suppression of frauds, will be more effectually accomplished — upon how much more impregnable though not more just grounds can the like trusts claim protection and specific execution from the courts in this State? No trammels are imposed by our laws (relative to such trusts) upon the judicial action. They are legal in their creation and proof. They rest for the sanction of courts of justice upon their intrinsic merits. They differ in no respect from other contracts authorized bylaw; and if meritorious, they can claim observance and fulfilment upon the grounds which would be sufficient to establish the like contracts if expressed in writing. A greater amount and more certainty of proof might be required for a parol than a written contract, but they are"equally sanctioned by law and entitled *100 to its supporting power. In onr judicial action upon such contracts wo arc not restricted to the narrow limits imposed upon courts in other States, and to assign as the sole ground of justification that such contracts, though forbidden by statutes, must be enforced, or otherwise the, very object of the statute would be defeated, and frauds, instead of being suppressed, would ho encouraged and sustained.
IVhat evidence shall he sufficient to establish such trusts it is not my purpose to discuss. The rules in relation, to implied or constructive trusts might doubtless be applied advantageously to the proof of express parol trusts. It must be clear and satisfactory, and such as eonld be reasonably attainable under the circumstances of the case. In the case under review the assignee, his widow, and tiie witnesses to the assignment are all dead. From the somewhat transient character of the population of that day, the vicissitudes of frontier life exposed to savage warfare, but few living persons could probably be found to explain a private transaction occurring twelve or fourteen years since. But I will not prolong these observations, lior anticipate questions which may arise in the future progress of the cause. Upon the whole, we are of opinion that there was an error in striking out such portion of the defendant’s answer as charged that the transfer from Mead to Moore was upon the trust set forth in the answer, and upon these being reinstated, the testimony of Mrs. Madden would of course be admissible.
But, independent of this ground, we are of opinion that the verdict of tlie jury was contrary to the evidence. One of the issues raised by the pleadings was as to the consideration upon which the assignment was made. A valuable consideration was charged to have been paid, and tills was denied. Courts of equity will not lend their aid to enforce contracts not founded on adequate consideration. The vendee or assignee must have paid the purchase-money or the consideration before he can demand performance of the contracts. If the consideration be impeached by competent and credible evidence, it must be sustained by rebutting proof, or the petition for specific performance would, according to the established rules of chancery practice, be dismissed. Row, there is not» partióte of evidence in this case or in any of its circumstances which would induce tlie belief that any consideration had ever been advanced by tlie assignee, or that in fact he had bought and paid for the laud, except such evidence as appeared on tiie face of the instrument itself. It is admitted* and charged by tlie plaintiff that the land was originally purchased and paid for by Mead. Ever since that purchase, at least until 1842, as appears from the record, both of the families lived upon the land. Ro attempt was made by tlie assignee or liis surviving widow, equally interested with tlie husband in the purchase, to claim under the assignment. The families, for aught that appears, lived in concord. The contract upon which this suit is brought was buried in the receptacle of forgotten things, when suddenly -a stranger, at least he has not the family name, is invested with administration, six or seven years after the death of the intestate and more than eight since tlie date of tlie assignment, and two days before the final confirmation of his appointment as administrator this suit is commenced. Tlie unexplained stateness of tiie claim might be plausibly urged as a ground for the refusal of the prayer of the petition. (2 Story Eq., § 571.) To say the least, it throws suspicion upon its meritoriousness. Since its inception many of tlie witnesses who could speak to the subject have been swept away. Time since then lias obliterated trom the recollection of the survivors many of tlie events once familiarly known. Ro reason can be gleaned from the record for a delay so detrimental to the defendant and so exceedingly advantageous to tlie plaintiff, as by it the number of witnesses who by possibility could be capable of explaining the transaction is constantly diminishing.
It is under such circumstances that the testimony of Mrs. Madden is introduced ; and though she does not expressly declare that no money was paid, as her attention was not directed to that special fact, yet lier evidence is entirely incompatible with the idea that any money was paid or that the assignment *101 ■was made with any other inducements or for any other purchase than those expressed in her testimony. Those are repugnant to the notion that any money was or could have been advanced. If Mrs. Madden bo-worthy of belief, if site be a credible witness, upon her testimony, in conjunction with other circumstances as appearing- upou the record, we must held the verdict to be contrary to the evidence, and as such should be set aside. The finding of the jury may possibly be explained from some misapprehension of the charge of the court and from a want of discrimination between the two aspects of the testimony of Mrs. Madden — one of which went to establish the trust, and the other showed, in effect, that no consideration could have been passed between the parties. The testimony being excluded by the court in one of its bearings, was probably rejected by the jury altogether. We are of opinion, therefore, that there was error in overruling the motion for a new trial.
Note 43. — Miller v. Thatcher, 9 T-482; McClennv v. Floyd, 10 T-, 159; Caney v. Dupree, 21 T.,211; Grooms o. Rust, 27 T., 231; Ruffier v. Womack, 30 T., 332; Johnson v. Delaney, 33 T, 42; Gibbs v. Penny, 43 T„ 560.
• Note 44. — Chilson v. Reeves, 29 T., 275.
Note 45. — Leakey v. Gunter, 25 T., 400; Grooms v. Rust, 27 T., 231.
Note 46. — Vandever v. Freeman, 20 T., 333; Massey v. Massey, 20 T.; 134.
It has become unnecessary to consider the other ground for a new trial, viz, that of newly-discovered evidence. Even on that ground the motion should have been sustained. These ancient transactions are involved in obscurity, and light upon them from unsuspicious quarters should not be excluded. The effect of the admission of the assignee to the witness would have tended strongly to the support of the defense in this case.
It is ordered, adjudged, and decreed that the judgment be reversed and the cause remanded for a nevv trial.
Reversed and remanded.