**KORKMAS v. WOMACK.**

No. 3844.

Court of Civil Appeals of Texas. El Paso.

June 15, 1939.

Rehearing Denied Nov. 2, 1939.

Travis Smith, of Tyler, and J. S. Simkins, of Corsicana, for appellant.

Ramey, Calhoun & Marsh, of Tyler, for appellee.

NEALON, Chief Justice.

This is a boundary suit filed in form of trespass to try title by Ellis Korkmas, plaintiff below and appellant in this Court, against W. L. Womack, appellee. From an adverse judgment plaintiff appeals.

The suit involves a strip of land 1393 feet long and 15 feet wide. The land of Korkmas is situated immediately north of the land of Womack. The case was tried to the Court. At the request of plaintiff (appellant) findings of fact and conclusions of law were filed. The controlling facts found by the Court were as follows: In 1855 Benjamin Scott owned a large tract of land, of which both tracts involved herein were parts. November 14, 1855 Scott sold the south 160 acres of his land to F. J. Ham, and conveyed by deed which described the land by metes and bounds with field notes calling for corners and marked with trees. The land of Womack is a portion of the northwest part of this 160-acre tract formerly sold to Ham.

Some years after Scott died the land retained by him when he sold the 160 acres to Ham were by his heirs subdivided into smaller parcels or blocks, and in this subdivision the lines were surveyed from the north and not from the north lines of the 160-acre tract first sold. Plaintiff's land is part of one of the blocks subdivided by the Scott heirs and is adjacent to and immediately north of defendant's land. Thirty-five or forty years ago there was an open passage way or wagon road (not a public road) leading from the road which lay along the west line of these lands and running easterly to another road lying east of the Scott lands. That road was abandoned many years ago, but up to several years ago there was left open a passage way which could be traveled by wagons, and which led part of the way eastward to a slaughter-pen which was maintained for sometime on the Scott land. No road or street along this line was ever dedicated; nor was there any agreement by adjacent landowners that the roadway should be the dividing line, nor was it mutually recognized as such. Testimony does not show that any controversy over the dividing line had ever been called to the attention of either adjacent owner until shortly before this suit was filed. No fence or other identifying location has ever been agreed upon by the owners or mutually recognized by them as the dividing line.

The defendant Womack made certain conveyances and created liens upon his land wherein and whereby he called for his northwest corner to be at 208.4 feet north of the line of the city limits of the City of Tyler. The northwest corner of the 160-acre tract (being also the northwest corner of defendant's tract) as located and found in 1910 is about 212.8 feet north of the city limit line, which is a well-defined and marked line. The Court found that the corner that defendant Womack had called for in his various conveyances as the northwest corner of his land was the northwest corner thereof, and so located said corner and found the dividing line between the properties of the parties litigant to be thence 89° 45' East, and directed it surveyed and marked so that it could be identified in the judgment. This was done.

The fifth finding of fact of the Court read as follows: "There was no pleading by the plaintiff alleging any agreed line, or that any dispute or controversy had ever before arisen about the true location of the line, or that there had been any mutual recognition of a particular location of the line; nor that any fence had ever been placed with any intention or understanding of the parties or either of them formerly owning the adjacent lands to place the fences on the line; nor to locate or place any road or passage way on the line."

Jo J. White, a surveyor, testified that in 1906 he surveyed the tract of 160 acres out of which the Womack tract was carved; that at that time there was a lane between the land now claimed by Womack and that now claimed by Korkmas; the lane was 25 feet wide; it was fenced on both sides; the north boundary of the Womack tract was practically in the center of the lane; that lane was used by the public until a few years ago. There was other testimony to the effect that there had been a road running along the north line of Womack's land and that it was kept open for the convenience of people going to church. There was evidence that this passage was used as a lane or road within ten years of the time when suit was filed.

The Court also found that both parties eliminated any issue of limitation.

As indicated by the findings, the conveyance under which Womack holds was made prior to the conveyances under which Korkmas holds. The Court concluded that the line as run for the conveyance of the 160-acre tract in which defendant's land was situate, applying as it did to the land first sold, controlled and marked the correct boundary; but on account of the actions of defendant in making conveyances calling for a point farther south, the judgment fixed the boundary at a point 4.4 feet farther south than said line.

Motion for new trial was filed setting up, among other grounds, that of newly discovered evidence. The Court found that the motion failed to show facts that would probably change the result of the trial, and did not disclose that sufficient diligence had been used by plaintiff to secure the testimony desired. The motion for new trial was therefore overruled.

## Opinion.

In our preliminary statement we restated the findings of the trial Court. These findings are not directly challenged by any formal assignment of error. Appellant largely confines his attack upon the action of the Court below to two grounds. The first of these is to the effect that the Court erred in not holding that a fence which appellant claimed stood on the line to which he now claims had been standing there for more than fifty years under the doctrine of "ancient fences" became the true division line between the lands and the parties "are thereby precluded" from setting up the contention that said ancient fence does not constitute the true division line between said lands. As to the location of the particular fence upon which appellant relies so strongly there was much conflict of testimony. There was evidence from which it might be inferred that appellant had claimed up to the line of that fence. There was also testimony, as hereinbefore stated, that there was a roadway between the two properties and that appellee's north boundary line, according to the calls in the conveyances under which he held, ran near the center of the lane or road.

At the beginning of the trial the following colloquy between counsel for plaintiff, Mr. Smith, and the trial Judge took place:

"Mr. Smith: It is agreed, your Honor, that the title to the respective tracts of land is in the plaintiff and the defendant, and that each has to such respective tracts a record title.

"The Court: In other words, each owns the land they claim to own, wherever the proper dividing line between them, is that it?

"Mr. Smith: Yes, sir; and that each has a chain of title from the State of Texas.

"The Court: All right."

While defendant Womack was testifying, in answer to questions propounded to him by the Court, he said that he paid taxes on somewhat more than 41 acres of land, which was described in his deed by metes and bounds; that he was not claiming any land except what he bought; that he was only claiming to where his lines ran and was claiming nothing beyond his proper lines, and that regardless of his position he was not claiming beyond his "proper line."

Likewise plaintiff (appellant) testified as follows in answer to questioning by the Judge:

"Q. Understand what I am asking you now; there is a fence there; now if that fence—if it should be determined that that fence takes in some land that would belong to Mr. Womack, the fence that has been standing there, if the Court should determine that it takes in some land that belongs to Mr. Womack, are you claiming that land or not? A. I don't want nothing but what I got coming to me, that's all I want —658 feet.

"Q. Well, you are claiming under your deed? A. That's all; no, I don't want nothing that don't belong to me, when he calls me he says 'my fence comes on your line,' I carry my abstract right straight down there in that evening, I say: 'Mr. Womack, if your fence is on my line, I am ready to tear my fence down and move it right now,' I don't want anything but what is right, I don't want Mr. Womack's land. * * * I don't want none of his land, I don't want nothing but what is coming to me."

. It is upon the answers made to these questions and other accompanying questions that appellee bases his insistence that the Court was correct in saying that both parties eliminated all question of limitation. Regardless, however, of whether or not that is a correct interpretation of the evidence, we think there was sufficient evidence to find either way upon the question of limitation. The evidence as to the location of the fences was conflicting and not of that conclusive character that would warrant sustaining appellant's proposition. There was testimony as to three fences, and the evidence as to their locations was not altogether harmonious. The state of mind of some (though not of all) of the witnesses may be exemplified perhaps by this statement made by one of them in response to a question asked by counsel:

"A. Now, brother, let me tell you something right now. I don't remember nothing about that fence, and I haven't got nothing to say about that fence. I haven't got nothing to say about nothing I don't know nothing about, and you needn't ask me no questions about it, for the fence is gone, and I don't know who taken it away and I don't know who put it there."

In view of the pleadings and the evidence we cannot say that the Court erred in refusing to hold that the defendant was estopped from asserting his right to hold to the true boundary because of the presence of what appellant terms an "ancient fence."

The second complaint of appellant is that the Court erred in refusing plaintiff a new trial upon the ground of newly discovered evidence. The first evidence which appellant classified as "newly discovered," was a portion of an old map of the City of Tyler. The map in question was tacked on the wall of the City Hall in the engineering department. It was claimed that this map would show a street called Bostick Street south of the Korkmas land. The other testimony which appellant classified as newly discovered evidence, and upon which he based his motion for a new trial, was to be elicited from Mrs. Eliza Weir. Mrs. Weir was in plaintiff's chain of title and her name appeared in the evidence several times as one who had formerly owned the property which he now owns. During this testimony it was also stated that she lived in Dallas. As stated, the Court held that the appellant failed to show that he used diligence in an attempt to procure this testimony upon trial. We feel that we would not be justified in interfering with the trial Court's action. The matter was largely within the discretion of the trial Judge. The evidence does not indicate that he abused this discretion. To authorize reversal it should appear that the ruling was manifestly wrong. McCaskey v. McCall, Tex.Civ.App., 226 S.W. 432. It must appear that there has been an abuse of discretion. New trials upon the ground of newly discovered evidence are not favored. Kountze v. Tucker, Tex.Civ.App., 103 S.W.2d 828, and cases there cited.

Judgment is affirmed.

PRICE, C. J., successor to NEALON, C. J., participated in disposition of motions for rehearing.