Guy WILSON, Appellant,

v.

John Edd THERRELL, Appellee.

No. 6687.

Court of Civil Appeals of Texas.

Amarillo.

July 1, 1957.

Rehearing Denied Sept. 9, 1957.

.

.

Bradley & Geren, Grosebeck, C. S. Farmer, Waco, Edwin T. Burton, Houston, for appellant.

Wilson & Cureton, Waco, for appellee.

CHAPMAN, Justice.

Appellee herein, John Edd Therrell (plaintiff below), instituted this suit against appellant, Guy Wilson, to establish a constructive trust on $\frac{4}{128}$ths interest in an oil and gas lease on 320 acres of land in Hutchinson County, Texas. Trial was to a jury and the issues submitted were as follows:

"Special Issue No. 1

"Do you find, from a preponderance of the evidence, that plaintiff, John Edd Therrell, and defendant, Guy Wilson, entered into an oral agreement on or before February 16th, 1954, that the said Therrell would convey an undivided $\frac{4}{128}$ths of $\frac{8}{8}$ths of the oil in and under the land in question to the said Wilson, and Wilson would sell the same and the money derived therefrom would be used to defray expenses of the said Therrel and Wilson as 'operators' in securing drilling contracts, supervising and developing the lease?

"Answer 'yes' or 'no'. * * *

"Special Issue No. 2

"Do you find, from a preponderance of the evidence, that the defendant, Guy Wilson, after receiving title to the said $\frac{4}{128}$ths of $\frac{8}{8}$ths of the oil under the premises in question, repudiated the agreement?

"Answer 'yes' or 'no'."

The jury answered both of said issues in favor of Therrell and on the jury's verdict judgment was awarded by the court establishing a constructive trust in favor of Therrell and granting Therrell a money judgment against Wilson for the money Wilson had received as royalty while he

held legal title to the 4/128ths interest. From this judgment appellant has perfected his appeal to this court.

Pending this appeal our attention was called to the fact that appellant has departed this life and left surviving a wife and one daughter. In view of Rule 369–a Texas Rules of Civil Procedure we shall proceed to adjudicate the cause as if all parties hereto were living.

On January 22, 1954, Guy Wilson secured an assignment from Gulf Oil Corporation and others whereby they assigned to him a 105/128ths interest in 320 acres of the Reimer Lease in Hutchinson County, Texas, under a development contract which provided, by way of limitation, that unless a well was commenced within 90 days and a new well commenced each 60 days, the title would automatically terminate on all the 320 acres except ten acre squares around producing wells.

According to Therrell's testimony, a day or two after receiving the Gulf assignment Wilson and he had an oral discussion concerning the development of the lease and he told Wilson he was acquainted with several persons financially capable of developing the tract.

In this conversation Wilson associated Therrell with him so he might find someone to finance the development. Wilson admittedly had no money with which to drill a well and needed to find someone capable of meeting the time limitations in the assignment from Gulf. No one but the parties hereto were present when these conversations were held. The testimony of the parties coincide generally except as to the interest in the leasehold estate that was to belong to Wilson. According to Therrell, before he sought a financier for the development Wilson specified he was to have a 30/128ths reversionary interest in the oil, to become a present interest by reversion when the money for drilling and completion was recovered. Therrell was to have no fixed interest, but his part depended

upon what he could save above the 30/128ths fixed interest to belong to Wilson and that which would be demanded by the prospective developer or financier. Wilson's version of their understanding was that he was to have the fixed 30/128ths interest above described and an additional 4/128ths interest in the oil as an overriding royalty and that Therrell was to have what he could save from the interest last described and the interest that would be demanded by the financier of the development.

Therrell negotiated with Edward Cameron Bolton of Waco, Texas, in an effort to procure someone to finance the development and a tentative oral agreement was reached between them on February 13, 1954. During these deliberations Wilson was unknown to Bolton and the agreement between Therrell and Bolton was reduced to writing and signed on February 16, 1954.

Following the oral agreement between Therrell and Bolton on February 13, 1954, and on the same day Wilson assigned to Therrell the entire lease-hold interest he had acquired from Gulf and others. The agreement between Therrell and Bolton provided that Bolton would have 7/128ths of 8/8ths of the oil in consideration of his financing the drilling and development of the tract but that 30/128ths of that amount would revert to Therrell when Bolton recovered his drilling and completion costs.

Therrell's testimony was that on February 13, 1954, "After I had this tentative deal with Mr. Bolton, Mr. Wilson only had a 30/128ths reversion interest. Neither one of us had any money, and I agreed to take 4/128ths, and he was to sell it, and we was going to pay our expenses. I was to be there operating the wells, and he was trying to sell it." He also testified Wilson had an equal right and privilege with him as operator, and that he subsequently, on April 1, 1954, assigned the 4/128ths interest to Wilson to sell for expenses and furnished him his gasoline courtesy card to use in traveling over the state to sell it, which was used, according to the testimony, to the amount of

$415.87. He testified that before he assigned the disputed interest he and Wilson made a trip to Houston to try to sell it. The record shows this trip to have been made between February 16 and April 1. They tried to sell it to Bill Williams and to his (Therrell's) brother but were unable to do so. Wilson admitted to the trip but said the interest they were trying to sell for expense money was a reversionary interest out of the $3\%_{128}$ths reversion that was to be his.

On February 16, 1954, the same day the formal agreement had been entered into between Therrell and Bolton, a written instrument was signed by Therrell and Wilson. This agreement recited that in order for Therrell to comply with the agreement with Bolton by which Bolton was to finance the development of the 320 acre lease Wilson had assigned his entire interest to Therrell so that title would stand in Therrell's name. This instrument, after recognizing some of the contents of the February 16 contract between Therrell and Bolton says: "I, John Edd Therrell, in consideration of the agreement between us, do hereby agree * * *" then follows his agreement to assign the $4\%_{128}$ths of $8\%_{8}$ths of the oil and $3\%_{128}$ths reversion after it has reverted from Bolton by reason of his having been repaid for money expended for drilling.

On April 1, 1954, by separate instruments Therrell conveyed to Wilson the $3\%_{128}$ths interest and the $4\%_{128}$ths interest, despite the fact that at that time the $3\%_{128}$ths reversionary interest mentioned in the February 16th instrument had not reverted from Bolton.

On June 6, 1954, a division order was signed by all record owners, including Wilson. The order showed the $4\%_{128}$ths in the name of Wilson. Therrell testified that Wilson did not repudiate his (Therrell's) rightful ownership to the disputed interest until May or June, 1955.

On November 30, 1954, Bolton's attorney prepared a clarification agreement as to the working interest and overriding royalty that was signed by all record owners. The $4\%_{128}$ths interest in dispute showed in that instrument to be in Wilson.

In support of his own testimony concerning the assignment of the disputed interest for convenience to Wilson that he might sell it for operating expenses Therrell offered Mrs. Fannie Baker of Dallas and Tom Roach of the same city. Mrs. Baker testified, in substance, that she knew Wilson well; that he often stayed in her home in Dallas, where she lived with her daughter and Mrs. Lois Woods; that much of the conversation had to do with the oil business; that Wilson told her the sad part of his Hutchinson County oil interest was that he did not start drawing anything until the man who financed the operation recovered his expenses; that he and Therrell were both out of money and that he was trying to sell a $\frac{1}{32}$nds to pay expenses. She further testified she went with him to see a Mr. Brown at Allen, Texas, to try to sell the interest, which would start paying immediately at the time Mr. Therrell got his. Mr. Roach testified he had known Wilson five years; that in May or June, 1954, Wilson told him they had an interest left to sell to get some expense money for their drilling in Hutchinson County; that Therrell had been out there doing the work and had sent him to Dallas to sell an interest for some operating capital.

■ In a case submitted upon only two special issues appellant brings before us thirty assignments of error, the first one of which asserts the court below was in error in admitting four separate and distinct instruments because the admission of each was a violation of the parol evidence rule and three separate and distinct statutes. Obviously, such an assignment would make an absurdity of an effort to discuss them separately in the order assigned without repeating ourselves continuously on the twenty-nine other assignments of a similar nature. Anyhow, the law applicable to the

creation of constructive trusts would make such effort unnecessary.

This court, in an opinion by Chief Justice Pitts in Johnson-Sampson Construction Co., Inc. v. W. & W. Waterproofing Co. Inc., Tex.Civ.App., 274 S.W.2d 926, has held that a point or assignment of error is "multifarious" where it embraces more than one specific ground of error or when it attempts in one point to attack several distinct and separate rulings of the trial court. Nevertheless, we shall attempt to discuss all issues raised that show any merit, though we could not discuss them in the chronology and manner in which they were projected in appellant's brief without continually repeating ourselves.

█ Fortunately, a number of cases involving various types of trusts have reached our Supreme Court in recent years and we have many late pronouncements concerning this field of jurisprudence. Except where trust transactions are required to be in writing as in the Texas Trust Act, Vernon's Ann.Civ.St. Article 7425b-1 et seq. it appears to us in reading the Supreme Court cases that the tendency is toward a more liberal construction in permitting parol evidence to explain transactions involving alleged trusts. But whether there has been any change by the courts in this respect or not it has long been the law that trusts may be proved by parol in Texas. Sorrells v. Coffield, 144 Tex. 31, 187 S.W.2d 980; Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471.

It is said in 42 T.J., page 680, Sec. 70:

"* * * a trust may be engrafted on a deed by parol evidence * * *"

Two early Texas Supreme Court cases, James v. Fulcrod, 5 Tex. 512 and Mead v. Randolph, 8 Tex. 191, are cited, as are many others.

Under the same section of page 682 it is said:

"The grounds for recognizing that a trust constitutes an exception to the parol evidence rule are: (1) for an asserted trustee to deny that property was received in trust (or to deny the facts which raise a resulting or constructive trust) is itself a species of fraud; (2) a document with which a trust may, at first sight appear inconsistent is but a part of the whole transaction—the document proves what is contained in it, but the part of the transaction not contained in it may be proved."

In view of appellant's contention that the conversations on which a trust is claimed in this case constitute an express trust, if any, we believe it would be well to draw some distinctions and some definitions from some of our recent Supreme Court cases.

In Mills v. Gray, 147 Tex. 33, 210 S.W. 2d 985, 987, our Supreme Court speaking through Judge Folley has said:

"Clear and concise statements of the distinction between express trusts, constructive trusts, and resultant trusts, and the law with reference thereto, may be found under the topic of 'Trusts' in American Jurisprudence.

"In 54 Am.Jur. 22, Sec. 5, is the following announcement:

"'* * * From the viewpoint of creative force bringing them into existence, trusts may be classed as "express trusts" and "trusts by operation of law," the latter being either resulting trusts or constructive trusts. An express trust can come into existence only by the one having legal and equitable dominion over the property made subject to it. A trust by operation of law, frequently called an "implied trust," comes into existence either through an implication of intention to create a trust as a matter of law or through the imposition of the trust irrespective of, and even contrary to any, such intention. In other words, a trust intentional in fact is an express

trust; one intentional in law is a resulting trust; and *one imposed irrespective of intention is a constructive trust.*'

"The distinction between resultant and constructive trusts is admittedly confusing, but as accurate a statement as may be found is that of the same text, in 54 Am.Jur. 147, Sec. 188, as follows:

" 'Resulting and constructive trusts are distinguishable, but there is some confusion between them. From a practical viewpoint, a resulting trust involves primarily the operation of the equitable doctrine of consideration—the doctrine that valuable consideration and not legal title determines the equitable title or interest resulting from a transaction—*whereas a constructive trust generally involves primarily a presence of fraud, in veiw of which equitable title or interest should be recognized in some person other than the taker or holder of the legal title.*' " (Emphasis supplied.)

Judge Griffin, speaking for the Supreme Court in Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256, 260, has said:

"Regardless of the language of some of the early cases, the Trust Act specifically defines 'express trusts' within the meaning of that Act."

■ Those definitions, which we deem unnecessary to quote here, are then set out in the opinion. When we examine them in light of the facts of this case and the pronouncements above quoted from Mills v. Gray, supra, we have to hold the facts of this case as found by the jury do not establish an express trust.

■ Any agreements or understanding out of which a constructive trust arises from written conveyances must be prior to or contemporaneous with the titles vested under the written conveyances. Allen v. Allen, 101 Tex. 362, 107 S.W. 528.

■ Appellee's testimony was to the effect that he told appellant he would put up ⁴⁄₁₂₈ths interest he saved out of his trade with Bolton and sell it for expense money for the two of them as operators and that this conversation was about the 13th day of February and before he went to see Mr. Bolton. This clearly brings the understanding between them in this respect within the rule announced in the Allen case, supra. Therrell also testified it was in June, 1955, after Mr. Bolton had started drilling the second bunch of wells and after oil had been discovered that Wilson told him he was not going to let him have the ⁴⁄₁₂₈ths interest back and was not going to sell it. He also testified Wilson avoided him and that he had to make many long distance calls before he was able to locate him.

■ The Statute of Frauds is urged as a bar to recovery. Our Supreme Court, speaking through Judge Brewster in Sorrells v. Coffield, supra [144 Tex. 31, 187 S.W.2d 981] has said:

"That portion of the English Act for the Prevention of Frauds and Perjuries declaring that all trusts in land must be evidenced by writing signed by the party declaring the trust was not included in our Statute of Frauds, Art. 3995, R.S.1925. Therefore, such trusts may be proved by parol in Texas. James v. Fulcrod, 5 Tex. 512, is an early illustrative case." See also, Leakey v. Gunter, 25 Tex. 400.

We believe the cases of Mills v. Gray, and Fitz-Gerald v. Hull, supra, are authority against appellant's contention that the court below was in error in holding that a constructive trust was created notwithstanding Article 1288 and Articles 7425b–2, 7425b–7. Quoting Judge Griffin again in Fitz-Gerald v. Hull, in his reference to Art. 7425b–2 he says [150 Tex. 39, 237 S. W.2d 259]:

"The only purpose the Legislature could possibly have had in thus amend-

ing Sec. 2, was to make more definite just what trusts were covered by the Act, and to state in so many words that the Act was not meant to apply to resulting or constructive trusts * * *."

Admittedly, Wilson and Therrell were joint adventurers in the promotion of the oil assignment. In that respect we quote again from our Supreme Court in Fitz-Gerald v. Hull, supra [150 Tex. 39, 237 S. W.2d 264]:

"'The relationship between joint adventurers, like that existing between partners, is fiduciary in character, and imposes upon all participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise. This is especially true of those to whom the conduct of the transaction, or the property involved therein, is intrusted. Such a party will be regarded as a trustee and will not be permitted to enjoy any unfair advantage because of his possession or control of the joint property. The mere fact that he is intrusted with the rights of his coadventurers imposes on him the duty of guarding their rights equally with his own, and he is required to account strictly to his coadventurers; and if he is recreant to his trust, any rights they may be denied are recoverable.' 30 Am.Jur. 'Joint Adventures,' p. 695, Sec. 34."

Again quoting from our Supreme Court in Mills v. Gray, supra [147 Tex. 33, 210 S.W.2d 988], it is said:

"'A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confident to hold in trust for a reconveyance or other purposes, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term "confidence" or "confidential relationship" liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof.'"

Our Supreme Court in Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93, 97, speaking this time through Judge Smith, quotes with approval the language used by Judge Griffin in speaking for the Supreme Court in Fitz-Gerald v. Hull, supra, as follows:

"While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or merely personal one."

It would be rare indeed to find any given state of facts completely parallel with the facts of a case already decided by our higher courts. Particularly is this true in trust cases. Therefore, we can only refer to principles announced by our appellate courts and point to cases most analogous to our own in reaching our conclusions.

In Fisher v. Kerlin, Tex.Civ.App., 279 S.W.2d 637 (N.R.E.), the plaintiffs con-

veyed their interest in land to the defendant in order that he might prosecute a condemnation suit it was thought the Government was going to file against them and agreed they would divide the proceeds recovered in the condemnation. The Government turned the land back instead of prosecuting the condemnation. The parties, not anticipating this would happen, had no agreement concerning such eventuality. The court imposed a constructive trust in favor of plaintiffs. From the record in our case the parties had no understanding with reference to the disposition of the 4/128ths interest in the event it was not turned into operating capital, so the court below imposed a trust in favor of the assignor claiming the equitable title.

We have quoted above rather extensively from the cited cases by our Supreme Court of Mills v. Gray, and Fitz-Gerald v. Hull, supra, but they each furnish some analogy to the instant case. In the former, in contemplation of a divorce, Gray and his wife each deeded community property of former marriages to their respective sons with the oral understanding between Mrs. Gray and her son, Harry G. Mills, that Mills, following his mother's divorce, would sell the property and divide the proceeds among her and her children or would convey it back to her. Mills repudiated the agreement and our Supreme Court imposed a constructive trust on the property. In the latter the parties were joint adventurers in securing leases that were to be taken in the names of all. The defendant procured the leases in his own name, refused to convey the others their interests and our Supreme Court imposed a constructive trust in favor of the other joint adventurers.

■ Appellant, in support of his claim that the 4/128ths interest in controversy belonged outright to him introduced a Clarification Agreement of the respective interests of the parties showing Guy Wilson owned the 4/128ths interest in controversy. He also introduced a tax statement show-

ing Wilson and not Therrell was paying the taxes. The record shows that at the time of the signing of the Clarification Agreement and at the time of the tax renditions the record title was in Guy Wilson. Naturally the taxing authorities would render the taxes against the record owner. If Therrell's theory of the case is true, and the jury has held it was, we see no particular inconsistency in Wilson having paid the tax while the legal title was in his name. If they were to sell the interest for operating capital, as contended by appellee, the record interest would have to show in the person assigning it before the purchaser's attorney would approve the purchase. If Therrell was to be believed and apparently the jury did believe him, the very reason for the assignment was so Wilson could assign it to any purchaser he could find without the trouble of going through Therrell.

Appellant asserts parol evidence was not admissible because the assignment of April 1, from Therrell to Wilson of the interest in controversy and the instrument they both signed on February 16 were based on adequate consideration, were contractual in nature and were valid contracts that could not be altered by parol. The instrument of April 1 says:

"Whereas John Edd Therrell is the owner of the interest in said lease hereinafter assigned * * * and is obligated to make this assignment to the said Guy Wilson pursuant to an agreement between John Edd Therrell and Guy Wilson dated February 16."

When we refer to the February 16 instrument we find it says:

"I, John Edd Therrell, in consideration of the agreement between us do hereby agree * * *."

Then follows an agreement to assign 36/128ths and 4/128ths interests.

As we view the above instruments singularly or together, they do not meet the standards of a contract claimed for them

by appellant and therefore do not come within the authority of the line of cases cited in support of his last mentioned assignment. Not knowing whether "the agreement between us" had reference to some contractual consideration, a consideration already paid, or to be paid, or the understanding that Therrell was transferring for the reason stated in his testimony, we hold the court below was not in error in failing to sustain appellant's special exceptions to the pleadings, failing to sustain his objections to the evidence and in failing to grant his motions for instructed verdict.

■ Appellant urged exceptions to the first issue given by the court as being duplicitous, in that it asked five questions in one issue. This issue does have several questions in one, but is framed in such way as to inquire of the jury whether or not the two parties had the understanding or agreement with reference to the assignment of the 4/128ths interest that was testified about. Therrell and his witnesses testified one way and the appellant denied the understanding and agreement. As framed, it constituted one ultimate question. The mere fact alone that it was duplicitous would not constitute reversible error as to appellant, especially in view of the fact that the burden of the issue was on appellee. In a case for wrongful death where more than one question was included in an issue inquiring of the several elements of the right of self-defense our Supreme Court, speaking through Chief Justice Hickman, has said in Greiger v. Vega, 153 Tex. 498, 271 S.W.2d 85, 88:

"The method employed by the trial court of grouping several elements of an ultimate issue into one special issue is to be commended."

We believe this case is sufficient authority upon which to overrule the contention here made and we further find no duplicitousness in Issue Number Two.

■ Issue Number One is objected to as being on the weight of the evidence,

an assertion to which we cannot give assent. Various other objections have been made to the contention of appellant that the instrument of February 16 embodied the entire contract of the parties and that parol evidence would have the effect of destroying the written instrument. We believe the instrument assigning the disputed interest is not inconsistent with the testimony of appellee and his witnesses and the finding of the jury that it was the result of Therrell's voluntary act following a common understanding that the title was to be placed in Wilson's name for convenience in selling it for expenses of operation.

■ Further objection is made of the failure of Special Issue Number One to ask if the 4/128ths interest in controversy was reversionary or an interest free of drilling or operating costs. There was no contention in the case in this respect and the objections were properly overruled by the court below. We also hold the trial court was correct in overruling the several objections made to Special Issue Number Two because it was a conditionally submitted issue based on Issue One, which appellant contends was objectionable. Appellant requested the following special issues which were by the court denied:

"Defendant's Special Requested
Issue No. 1

"Do you find from a preponderance of the evidence that the assignment from Therrell to Wilson of the undivided 4/128ths of 8/8ths of the oil in and under the land in question was made for convenience only and that the true ownership of said interest was to remain in Therrell until said interest was sold?

"Answer 'yes' or 'no'

"Answer ——

"Defendant's Special Requested
Issue No. 2

"Do you find from a proponderance of the evidence that the 4/128ths interest

in question was assigned to Wilson to be held in trust by Wilson for the use and benefit of John Edd Therrell?

"Answer 'yes' or 'no'

"Answer ———

"Defendant's Special Requested Issue No. 3

"Do you find from a preponderance of the evidence that the ½₈ths interest in question was assigned to Wilson in trust as a matter of convenience?,

"Answer 'yes' or 'no'

"Answer ———"

The court properly refused said issues because: (a) Requested Issue Number One is not an ultimate issue and is embodied in Special Issue Number One given; (b) Special Issue Number Two inquiring if the interest assigned was in trust for Therrell was clearly a question of law; (c) requested Issue Number Three, inquiring if the interest was assigned in trust was also a question of law.

 Appellant's 23rd assignment of error is to the effect that the court erred because there is no finding by the jury that the interest involved in this suit belonged to Therrell. We do not find in this assignment any error. It is in the record without dispute that at the time of the assignment the title was in Therrell's name and had been since the agreement on which this suit is based. We have found no requested issue in the record concerning this question nor any objection to the court's failure to ask it. Even if the issue was a necessary one, it having not been requested and there being no objection for failure to give it, we would have to consider it as waived. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79. Additionally, our courts hold that on appeal from a judgment on a jury's fact-findings, the trial court must be presumed to have made such necessary findings on issues not submitted to the jury as will support the judg-

ment. Rule 279, T.R.C.P.; San Antonio Hermann Sons Home Ass'n v. Harvey, Tex. Civ.App., 256 S.W.2d 906; Walker v. Texas Employers' Insurance Ass'n, Tex., 291 S.W.2d 298; Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464; Traders & General Ins. Co. v. Wimberly, Tex.Civ.App., 85 S.W.2d 343.

Appellant assigns as error the failure of the trial court to grant a new trial upon newly discovered evidence. In support of his assignment he has brought forth a supplementary statement of facts with some ten affidavits.

 The law is settled in this state that a granting of new trial on grounds of newly discovered evidence is within the judicial discretion of the trial court, and its acts will not be reviewed except where there is an abuse of discretion. Miller v. Donald, Tex. Civ.App., 235 S.W.2d 201; Kountze v. Tucker, Tex.Civ.App., 103 S.W.2d 828; Thomas v. Johnson, Tex.Civ.App., 190 S.W. 2d 849.

 We also have authority for the fact that to justify a reviewing court in reversing the order of the trial court denying a new trial, the trial court's ruling must be manifestly wrong. Korkmas v. Womack, Tex.Civ.App., 132 S.W.2d 629.

 The case of The Houston & Texas Central Railway Co. v. Forsyth, 49 Tex. 171, holds that it must now be regarded as a settled rule of practice in this court, to revise the action of the District Court overruling the motion, where newly-discovered evidence, when considered in connection with the facts developed on the trial, is clearly material to the issue, and might probably produce a different result on a different trial.

Huggins v. Carey, Tex.Civ.App., 149 S. W. 390 by the Supreme Court of Texas holds that in an action for breach of marriage promise, where plaintiff testified at the trial that she gave birth to a child in a distant city, giving the names of the

doctor and nurse who attended her, newly discovered evidence that no such nurse and doctor were known in that city and the birth was not recorded was sufficient to require the granting of a new trial, though it tended to impeach plaintiff's testimony, since it also tended to establish a material fact.

We have read all the affidavits and carefully considered this assignment, but we do not believe the affidavits in this case furnish anything like the strength for a motion for new trial as those in the last two cases above named.

 The court below had an opportunity to observe all the witnesses, especially the parties to the suit, under able and extended examination, direct and cross, by veteran, able and experienced lawyers. It is presumed he carefully read the motion for new trial for newly discovered evidence and the accompanying affidavits. If, after doing so, he did not consider the new proferred testimony "might" or "probably" would result in a different verdict, we do not feel justified in saying he abused his discretion, especially in view of the fact that the affidavits are all of an impeaching nature. Even if it might be said that the affidavit of the affiant Thedford furnished new evidence, it was such as to not only impeach Therrell but also Wilson himself. The Thedford affidavit recites that Therrell told him he gave the ⁴⁄₁₂₈ths interest to Wilson so he would have an income. This was contrary to Therrell's testimony during the trial but also contradicted Wilson, who testified he was entitled to it as part of the original agreement in which he retained the ³⁹⁄₁₂₈ths reversionary interest. It is doubtful if a jury would look kindly upon a party who offered a witness who testified to a material fact contrary to the testimony of the party offering it.

 Appellant's 28th point of error is that the testimony was insufficient to establish a trust by clear, satisfactory and convincing evidence. We feel this assignment is to some extent repetitious. We have cited and quoted from numerous cases in which the courts have established constructive trusts where we feel the evidence was no more clear, satisfactory and convincing than the case at bar. We, as an appellate court, must take the testimony upon which the jury has rendered their verdict in its most favorable light. The jury did not believe the appellant, Wilson, or else it would not have answered the questions as they did. When the testimony is examined upon the theory of the appellee, then we must say it was clear, satisfactory and convincing within the requirement of the law of constructive trusts.

American Jurisprudence has been extensively quoted with approval in the Supreme Court cases from which we have quoted so many statements. When we take these statements which draw the distinctions between the different type trusts and define constructive trusts, then apply those distinctions and definitions to the facts as found by the jury in the instant case, we encounter no difficulty in saying the court properly held that the facts as found by the jury in this case establish a constructive trust.

 The law of this case when applied to the facts found by the jury showed legal title to the ⁴⁄₁₂₈ths interest in controversy in the name of Wilson for convenience of the two parties operating in a fiduciary relationship in the development of an oil and gas "farm-out". The presence of fraud, as mentioned in Mills v. Gray, supra, arose at the time of repudiation, so equity, under such a situation constructs a trust to protect the person to whom rightful ownership belongs. If Wilson was not entitled to the disputed interest, which the evidence shows had accumulated approximately $6,000 at the time of the trial and was still paying $375. per month with no indication of an end to the payment, then such amount would be unjust enrichment within the meaning of that term as it is

used in establishing constructive trusts. Wilson was either entitled to it or he was not. If he was not, then the retenton constituted unjust enrichment. If that part of Wilson's $\frac{36}{128}$ths interest still owed by him may be valued in the same manner as the part of the interest he sold, then his farm-out from Gulf resulted in a gross value to him of approximately $40,000. The fact that Therrell's portion has been worth considerably more must be attributed to the excellent trade he made with the financier, Mr. Bolton. Anyhow, it is not the duty of this court to adjust equities between the parties but to decide if a reversible error was committed in the trial below. Believing no such error was committed as to justify a reversal, the judgment of the court below is affirmed.