KLEIN et al. v. SIBLEY.

No. 11697.

Court of Civil Appeals of Texas.
San Antonio.

May 14, 1947.

Rehearing Denied June 11, 1947.

Emmett Shelton and Shelton & Shelton, all of Austin, and Tynan, Taylor, Calhoun & Robinson, of San Antonio, for appellants.

Nat L. Hardy and Carl Wright Johnson, both of San Antonio, for appellee.

MURRAY, Justice.

This is an appeal from an order overruling pleas of privilege by O. B. Klein and F. N. Pierce. The suit was instituted by A. T. Sibley against O. B. Klein, F. N. Pierce and W. P. Thompson in the 73d District Court of Bexar County, Texas. Klein resides in Travis County, Pierce, in Williamson County, and Thompson, in Bexar County.

Plaintiff alleged, among other things, that he and defendants entered into an oral contract and agreement to purchase, improve, subdivide and sell two tracts of land adjacent to the City of San Antonio in Bexar County, Texas; one containing 150 and the other 119 acres of land. After plaintiff had transferred options to purchase these two tracts of land to Klein and Pierce, and after the 150-acre tract had actually been purchased, defendants repudiated the joint adventure contract and refused to let plaintiff proceed to subdivide and sell this land, to his damage in the sum of $107,000.

Plaintiff further alleged that after the purchase price of the land and cost of operations had been realized out of the sale of lots and repaid to Klein and Pierce, then the unsold land was to be divided among the parties according to their respective interests. Therefore, plaintiff contended that he had a present interest in the land, and prayed for a receiver to take charge of the affairs of the joint enterprise, for judgment establishing his interest in the real property, fully described in his petition, according to his proportionate share in the joint enterprise and, in the alternative, that he have judgment against defendants jointly and severally for his damages.

Defendants Klein and Pierce filed pleas of privilege, in statutory form, to be sued in the counties of their residence.

Plaintiff controverted these pleas, asserting venue in Bexar County under subdivisions 4 and 14 of Art. 1995, Vernon's Ann.Civ.Stats., commonly called the venue statute.

The trial court after hearing evidence overruled the pleas of privilege and Klein and Pierce have prosecuted this appeal.

■ The rule is well settled that when a plea of privilege is filed in due and legal form it is prima facie proof of the right of a defendant to be sued in the county of his residence unless plaintiff is able to show that an exception exists to the general rule which gives a citizen the right to be sued in the county of his residence. Rule 86, Texas Rules Civil Procedure.

Appellee makes the following three counter points, to-wit:

"1. This suit is properly brought in Bexar County, Texas, because the appellee shows under his allegations and proof that he has a present interest in the lands in Bexar County described in his petition, because of the joint enterprise agreement with the appellants.

"2. This suit is properly brought in Bexar County because appellee shows under his allegations and proof that he has a present interest in the lands in Bexar County described in his petition, said interest being held by the appellants in trust.

"3. This suit is properly brought in Bexar County because under the appellee's allegations and proof he has a bona fide cause of action for damages against the appellants and the defendant, Thompson, jointly, and that the defendant Thompson resides in Bexar County, Texas."

We prefer to discuss appellee's counter points rather than appellants' points because, as above stated, the burden of showing venue in Bexar County is upon appellee and a more logical discussion can be had in this manner.

Appellee's first and second counter propositions present the contention that the venue of this suit can be maintained in Bexar County because, under the provisions of Subdivision 14 of Article 1995, it is a suit for an interest in land located in Bexar County.

It is a well-settled rule that in determining the nature or character of a suit a court must look to the allegations of the petition. Gilbert v. Gilbert, Tex.Civ. App., 195 S.W.2d 930, affirmed Tex.Sup., 195 S.W.2d 936.

Appellants and appellee in discussing this matter have brought forward both the allegations and the proof, but we are definitely of the opinion that we can consider only the allegations. This being true, we here set forth the material allegations of plaintiff's petition, as follow:

"2. That shortly prior to the 24th day of April, 1946, the plaintiff, A. T. Sibley, and the defendants, O. B. Klein, F. N. Pierce and W. P. Thompson, orally entered into a contract and agreement to purchase, improve, subdivide and sell the two tracts of land hereinafter fully described, one containing 150 acres of land, and the other containing 119 acres, said land being adjacent to the City of San Antonio and situated in Bexar County, Texas. That by said contract and agreement, said parties undertook a Joint Adventure or Joint Enterprise for the purpose of the purchase, sale, improvement and subdivision of said land, which said Joint Adventure or Joint Enterprise was to continue until said land had been purchased, improved, subdivided and enough of the same sold to repay the cost of the purchase price and the improvements which were to be made in carrying out subdivision and sale of said property as lots or small tracts. That after a sufficient amount had been sold to repay said capital investment, the remaining lots and tracts were to be divided between the parties according to the proportions hereinafter alleged, or, if sold before division, the net profits were to be divided in the proportions hereinafter set out. That according to said Joint Adventure agreement, the plaintiff was to contribute to said enterprise his labor and services in preparing said tracts of land for sale as a subdivision of lots and small tracts and in procuring purchasers for said lots and tracts. That the said defendants, O. B. Klein and F. N. Pierce were to advance the capital necessary to complete the purchase of said two tracts of land and to pay for the improvements necessary to prepare the same for sale as a subdivision, and that the defendant, W. P. Thompson, was to contribute certain services to said Joint Adventure.

"That according to said agreement, said Joint Adventure was to be owned by the parties hereto in the following interests or proportions, subject to the right of the said defendants, O. B. Klein and F. N. Pierce to be repaid all capital advances made by them, the said Klein and Pierce were to jointly own 64-⅓% interest in said Enterprise as it applied to the 150 acre tract; that the defendant, Thompson was to own a 5% interest as applied to said 150 acre tract, and that the plaintiff was to own the remaining 30-⅔% interest, and that the defendants, Klein and Pierce were to jointly own 50% interest as applied to the 119 acre tract; the defendant Thompson was to own 5% interest in said 119 acre tract, and the plaintiff the remaining 45% interest in said 119 acre tract.

"3. That at the time plaintiff and defendants entered into the Joint Adventure agreement heretofore alleged, the plaintiff, A. T. Sibley, was the beneficial owner and had at his disposal, options or execu-

tory purchase contracts on said two tracts of land. That said purchase contracts or options were in the name of B. F. Ruby as buyer, but were actually the property and under the control of plaintiff. That the said written contracts of sale were both dated March 12, 1946, one being for 3 tracts of land each containing 50 acres * * *. The other contract of sale covering 119 acres of land. * * *

"4. That thereafter, and on or about April 24, 1946, the plaintiff procured a transfer and assignment from the said B. F. Ruby to F. N. Pierce and O. B. Klein of said option and purchase agreements on said two tracts of land described in the preceding paragraph. That the said O. B. Klein and F. N. Pierce have paid the cash payment required by said contract to complete the purchase of said 150 acre tract and that on or about the 19th day of August, 1946, the deed from the former owners of said 150 acre tract conveying said property to the said Pierce and Klein was duly delivered and the legal title to said 150 acre tract has been conveyed to the said Pierce and Klein, but that said tract is in fact owned by the parties hereto in accordance with the proportions hereinabove set out, as a part of said Joint Adventure herein alleged.

"That the purchase contract and option to said 119 acre tract has been extended and it is now a valid and subsisting option and contract to purchase and it is held in the names of O. B. Klein and F. N. Pierce, but in fact belongs to said Joint Enterprise and to the parties hereto in the proportions alleged above.

"5. That from and after the formation of said Joint Adventure by the agreement and contract heretofore alleged herein, plaintiff has devoted his time and attention to the promotion of said subdivision and prepared plats and maps of the same; has entered into various extended negotiations concerning the dedication and improvement of streets and roads in said subdivision and has procured and has under contract a large number of purchasers who are ready, able and willing to buy the lots and tracts in said subdivision as soon as the same are ready for delivery. That such services have been rendered with full knowledge of the defendants herein as a part of said Joint Adventure and with their cooperation and consent as a part of the necessary labor for carrying out said Joint Adventure, but that immediately after the consummation of the purchase of the 150 acre tract on or about August 19, 1946, the said defendants have repudiated said Joint Adventure agreement; have denied that this plaintiff has any interest in said real estate and the proposed subdivision thereof, and have excluded plaintiff from any further participation in the affairs of said Joint Adventure or in the control and management of said real property purchased for and owned by and for the benefit of said joint adventure.

"6. Plaintiff further alleges that according to subdivision plans prepared by him and proposed to be carried out by the parties to said Joint Adventure, said tracts, when divided into business lots and one-half acre tracts, could be sold for cash within a reasonable time for an amount sufficient, after repaying the original purchase price of said 150 acre tract and paying for all improvements and sales costs necessary to prepare, subdivide said tract and obtain the purchasers, so that plaintiff would be entitled to receive as his share of the lots and tracts distributable according to his interest of 30⅚%, lots and tracts of the total value of $51,000.00, or if all of said land were sold without any division in lots and tracts, then his share in the net profits of the subdivision and resale of said 150 acre tract would amount to the sum of $51,000 and that likewise he would be entitled to receive in the distribution of lots and tracts of land as to the 119 acre tract real property worth a total of $56,-000.00, or if all of the same were re-sold without any distribution in lots and tracts, his share in the net profits which he would be entitled to receive in cash would amount to the sum of $56,000.00, or a total on said two tracts for the complete Joint Adventure of $107,000.00.

"7. Plaintiff further alleges that unless the affairs of said Joint Adventure and the plaintiff's interest therein are protected by the appointment by the court of a receiver to take charge of said property and to pre-

serve and administer the same under the orders of the court, plaintiff will suffer irreparable loss; that the defendants will use said property already purchased, and the option and purchase contract for the additional tract for their own use and benefit; will exclude plaintiff from any participation in the management of the same and in any of the profits resulting from a re-sale of said real estate, and that plaintiff's right to an appointment of a receiver to take charge of the affairs of said Joint Adventure is the same as in a case of a partnership and that the acts of the defendants herein are sufficient to constitute a dissolution of the Joint Adventure of partnership.

"Wherefore, plaintiff prays that the defendants and each of them be given notice to appear herein and show cause why a receiver should not be appointed for the purpose of taking charge of all the property and affairs of said Joint Adventure. Plaintiff further prays that defendants and each of them be cited to appear and answer herein and that upon trial hereof plaintiff have judgment against the defendants establishing his interest in the real property described above according to his proportionate share in said Joint Enterprise and that in the alternative he have judgment against the defendants jointly and severally for his damages in the sum of $107,000.00, and that he have all other relief, general and special, to which he may show himself entitled, in law and in equity."

▉ We have concluded that the nature of appellee's cause of action, as determined from his petition, is one for damages and not one for the recovery of an interest in land.

▉ Appellee alleges that the full purchase price of the land was paid by appellants and that title to the land was taken in their name. He does not contend that he paid any part of the purchase price which was paid to the Herbst heirs for the land. He therefore is not suing to establish a purchase money trust in land. Bogert on Trusts and Trustees, Vol. 2, p. 1371. In Gardner v. Randell, 70 Tex. 453, 7 S.W. 781, 782, the court said:

"Resulting trusts stand upon a different footing. There the law creates a trust in favor of the party who pays the consideration by which the title has been acquired in the name of another; and the rule is that the consideration must be paid, and the trust must arise, at the very time of the transaction. * * * It is not a resulting trust that is claimed in this case."

▉ Appellee's allegations further show that he does not have any present interest in the real estate described in his petition, first because any agreement he had with reference to any interest in the land was an oral agreement which could not be relied upon to create an expressed trust interest in land in view of the provisions of Section 7 of Article 7425b, Vernon's Ann.Civ. Stats., providing, in effect, that an expressed trust in real estate can be created only by an agreement in writing.

It is true that prior to the enactment of Article 7425b—7 Acts 1943, 48th Leg. Ch. 198, as amended Acts 1945, 49th Leg. Ch. 77, an expressed parol trust could be created in land by an oral agreement. Pyron v. Brownfield, Tex.Civ.App., 238 S.W. 725; Schultz v. Scott, Tex.Civ.App., 210 S.W. 830; Clarkson v. Whitaker, 12 Tex.Civ. App. 483, 33 S.W. 1032; Hill v. Belnoski, Tex.Civ.App., 42 S.W.2d 856.

Unquestionably, one of the principal reasons for the enactment of Art. 7425b—7, supra, was to prohibit the creation of expressed trusts in land by oral agreements. The following language contained in Art. 7425b—7 can have no other purpose, to-wit:

"Provided, however, that a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared:

"1. By a written instrument subscribed by the trustor or by his agent thereunto duly authorized by writing;

"2. By any other instrument under which the trustee claims the estate affected."

Appellee contends that there can be an expressed trust which at the same time is a resulting trust. This is undoubtedly true, but here appellee affirmatively shows that he did not pay any part of the purchase

money but that the same was paid in full by appellants. It is true that appellee alleges that he put into the joint adventure options worth a great deal of money and that he put in time and services in making plats and maps, that he lined up salesmen and located prospective purchasers looking to the day when the tracts would be divided into lots and be ready for sale, but all of these valuable things did not constitute any part of the purchase price of the land, which was paid to the grantors. The furnishing of the options and the services would not give him any present interest in the land. He is compelled to rely entirely upon the oral agreement to establish any interest in the land, and Art. 7425b—7, supra, prohibits such an agreement from establishing a trust in land unless it is in writing.

When our statute of frauds was first adopted Section 7 of the original English "Act for the Prevention of Frauds and Perjuries" (29 Chas. 11) was omitted, and thus for many years parol trusts in realty have been recognized in Texas.

However, since the adoption of the "Texas Trust Act" Article 7425b—7, supra, in 1943, as amended in 1945, there can be no expressed parol trust in realty. The effect of Art. 7425b—7, supra, is to adopt Section 7 of the old English "Act for the Prevention of Frauds and Perjuries." The rule in Texas should now be the same as it is in those states in which Section 7 of the English Act has been in effect.

In Smith v. Burnham, C.C., 22 Fed.Cas. No. 13,019, p. 465, decided in 1834, which was a case very similar to the case at bar, Justice Storey, after an extended discussion of the case, made the following summation:

"The true result to be deduced from the authorities seems to me to be, that in the first place the present cannot be deemed the case of a resulting trust in the lands purchased of Black, or of the proceeds thereof, or in any other lands to be purchased on behalf of the asserted partnership; and, in the next place, that the whole title of the plaintiff resolves itself into a parol trust, created by an express agreement of the parties in the purchase and sale of lands on joint account, which is within the statute of frauds. It seems to me, that to admit the plaintiff to recover in this case, would break down the whole operation and policy of the statute of frauds in regard to trusts."

In that case Justice Storey goes so far as to hold that the plaintiff could not even recover an interest in the proceeds from the sale of the land after it had been sold. Later decisions disagree with this holding, but not with the holding that the alleged parol trust in the land itself would be void.

In 18 A.L.R. 485, it is stated:

"Generally speaking, it may be said that as a rule all suits recognizing the existence of the partnership and seeking relief which may be legitimately sought by a partner, are upheld, while on the other hand, parol contracts for an interest in land are ignored and suits brought to enforce them dismissed although they may constitute a part of a partnership agreement."

Aside, however, from whether appellee's alleged trust interest in the land was void under the Texas Trust Act (Art. 7425b—7, supra) we are confronted with the further fact that appellee has alleged in substance that he was not entitled to any interest in the land purchased until it had been subdivided into lots and a sufficient number of lots sold to realize a sufficient amount of cash to fully reimburse appellants for all sums of money advanced by them, both for the purchase of the land and the expenses of subdividing and selling the land and, further, that no lots have been sold and appellants have not been reimbursed. Thus appellee shows by his allegations that he has no present interest in the land and could not possibly recover any such interest at the present time.

What was said in Lanier v. Looney, Tex. Civ.App., 2 S.W.2d 347, 350, applies here, to-wit:

"Appellant's theory of the case apparently is that a suit to enforce an oral agreement entered into between parties to become jointly interested in the mineral rights to land, subsequently acquired by leases taken in the name of one of the parties, and in which the other party has fully performed his part of the agreement, is a suit for the recovery of land, and that,

under the mandatory provisions of the statute above quoted, no district court of the state has jurisdiction to try such suit, except the court in the county in which the land is situated. We cannot agree to this contention, either that such a suit is one to recover land, or that, because of the mandatory provision of section 14 of the venue statute, every district court other than the one in the county in which the land is situated is denied jurisdiction to try same. In the instant case, the agreement is that the lease be taken in the name of appellant, and the judgment sought and obtained is not one to change this record title, except in so far as a judgment declaring appellee's interest in the leases and that appellant holds such interest in trust for appellee be notice of that fact."

See also: Sorrells v. Coffield, 144 Tex. 31, 187 S.W.2d 980, Tex.Civ.App., 183 S. W.2d 223; Smith v. Rampy, Tex.Civ.App., 198 S.W.2d 592.

We are of the opinion that when appellee's petition is considered in its entirety no other conclusion can be reached than that the main purpose of his cause of action is to recover damages for the breach of an oral contract to purchase, subdivide, improve and sell real estate, and that it is not to recover a present interest in land.

 Appellee's third counter point is that he is entitled to maintain venue in Bexar County under the provisions of Subdivision 4 of Art. 1995, supra, because one of the defendants, Thompson, is a resident of Bexar County. The law is well settled that where venue is based upon subdivision 4, supra, that the plaintiff must both allege and prove a cause of action against the resident defendant and allege a joint cause of action against the resident and non-resident defendants, or at least a cause of action which he is entitled to maintain against all the defendants in order to prevent a multiplicity of suits. Rudco Oil & Gas Co. v. Ogden, Tex.Civ.App., 167 S.W.2d 586; Kelly v. Lobit, Tex.Civ. App., 142 S.W.2d 301; Tunstill v. Scott, Tex.Civ.App., 120 S.W.2d 274; Caprito v. Weaver, Tex.Civ.App., 77 S.W.2d 595; Padgett v. Lake Cisco Amusement Co., Tex. Civ.App., 54 S.W.2d 201; Conner v. Manning, Tex.Civ.App., 54 S.W.2d 249.

Here appellee has neither alleged nor proved a good cause of action against the resident defendant Thompson. Thompson does not have title to any of the land in his name and he has not been shown to have breached any agreement to purchase, subdivide, improve and sell the land.

The order of the trial court overruling the pleas of privilege is reversed and judgment here rendered granting such pleas of privilege and directing the clerk of the trial court to transfer the cause to the District Court of Williamson County, Texas.