Albert M. ROGERS et al., Appellants,

v.

C. C. WINN et al., Appellees.

No. 13503.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 14, 1959.

Carl Wright Johnson, San Antonio, Nat L. Hardy, San Antonio, Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellant, C. C. Winn.

Dean B. Kirkham and Pichinson, Utter & Chase, for appellants, Albert M. Rogers et al.

Al J. Klein, San Antonio, for William H. Forney.

MURRAY, Chief Justice.

This is a suit to impose a constructive trust upon an oil and gas lease and for money damages for that portion of the lease now beyond plaintiffs' reach, and for an accounting. It was brought by Albert M. Rogers and ten other plaintiffs against C. C. Winn, C. A. Winn, William H. Forney, Heath Renfro and the Alamo National Bank of San Antonio. The defendants C. A. Winn, Heath Renfro and the Bank, were given instructed verdicts in their favor, and no complaint is made by any of the parties to this action and it will not be necessary to hereinafter refer to these defendants. Plaintiffs' causes, and that of the cross-plaintiff William H. Forney, were submitted to a jury on special issues, all of which were answered in favor of plaintiffs and cross-plaintiff Forney.

Judgment was entered in favor of plaintiffs, impressing a constructive trust upon a fractional part of the working interest of an oil and gas lease on 120 acres of land owned by W. F. L. Lehman, located in what is known as the London Gin Area of Nueces County, Texas, and denying any recovery to Forney.

Rogers and eight of the other plaintiffs have appealed, contending that they should have recovered more; C. C. Winn has appealed contending that there should have been no recovery against him; and Forney has appealed contending that he should have recovered against Winn on his cross-action. In order to avoid confusion we will refer to the parties by their respective names, except the eleven original plaintiffs who will sometimes be referred to as plaintiffs.

The chronological order of the events involved in this lawsuit will now be set out.

(1) Forney and Winn, a partnership composed of William H. Forney and C. C. Winn, was engaged in acquiring, selling and developing oil and gas leases. On October 9, 1952, the partnership acquired an oil and gas lease on a 120-acre Lehman Tract located in the London Gin Area of Nueces County. This lease was for a primary term of sixty days and would expire in sixty days unless drilling was commenced.

(2) Forney and Winn sold various fractional interests in this lease to each of the plaintiffs, based upon a written contract in the form of a letter, each letter containing the same provisions. We here set out one of these letters:

"November 15, 1952
"Dr. C. L. Concklin
2205 16th Street
Corpus Christi, Texas
"Dear Dr. Concklin:
"This letter evidences an agreement between you and Forney & Winn, hereinafter referred to as Operators.
"You have purchased from us as Operators, and we have sold to you, one-sixteenth of the working interest, subject to one-eighth of eight-eighths overriding royalty, in a lease consisting of 120 acres, being the East 22½ acres of the North one-half of the West 195 acres of the North one-half of Section 26, and the South one-half of the West 195 acres of the North Half of Section 26, Laureles Farm Tracts, Nueces County, Texas, subject to the terms of said lease.
"For this one-sixteenth interest you have paid to us the sum of $3,500.00 cash, receipt of which we hereby acknowledge. For

this consideration paid to us, we as Operators, agree to drill the first well on this lease, to be known as the Forney & Winn No. 1 Lehman, to a depth of 4560 feet; and in the process of drilling to said depth, we will core the 4500 foot 'field' sand and drill stem test it if, in our opinion, the same is necessary or advisable. It is understood, however, that should we encounter production at a lesser depth, we will be under no obligation to go any deeper than the sand encountered.

"The $3,500.00 paid to us represents your total cost toward the drilling of said well to the point of starting the completion attempt. This will include the coring program we have heretofore set out, Schlumberger, drill stem tests, and all other miscellaneous items that could be encountered prior to the actual completion attempt. When the completion attempt is started, you will share pro-rata in all costs from that time on.

"In the event a well is completed as a producing well, or in the event a hole is dug and thereafter abandoned as a dry hole, and a new location is made by us as Operators, you will have ten days' time after receipt of written notice from us that we are to commence drilling operations on another well to advise us that you do not care to so participate, if at this time you have an interest in a producing well or wells on this lease, a 20 acre unit will be cut out in as nearly the form of a square as possible around each producing well and the balance of the lease must be re-assigned to us as Operators. If you do not wish to participate in any such well or you do not then have an interest in a producing well on this lease, you must then re-assign all of your interest, with no acreage reserved, to us as Operators.

"As Operators, we agree to hold you free and clear of all other charges or expenses that might be incurred relative to the actual drilling of the first well down to the point of the completion attempt, over and above the $3,500.00 consideration heretofore paid.

"It is understood and agreed that Forney and Winn are the Operators of this acreage and any wells drilling thereon and that all decisions with reference to locations, completing and operating will be made by Forney & Winn.

"In the event a dry hole is dug on this tract and we specify a new location scheduled for a certain month, we agree to give all parties interested in the working interest ten days' written notice specifying the location, proposed depth, and estimated approximate cost of such well.

"We believe the above accurately reflects our understanding of our agreement, and if you concur, please sign and return one copy of this letter to us, which will indicate your acceptance of the terms and conditions herein set out.

> "Very truly yours,
> Forney & Winn
> Charles C. Winn

"RP:nc
Accepted and approved this
——— day of November, 1952.

C. L. Concklin."

(3) Forney and Winn drilled the well called for in the written (letter) contracts and completed it as a dry hole on December 17, 1952.

(4) After the completion of the dry hole the lease would expire unless the drilling of a new well was commenced within 90 days thereafter. The right to determine whether a new well would be commenced within the 90-day period was to be determined by Forney and Winn, under the provisions of the written contract.

(5) The plaintiffs contend, and the jury found, that Forney and Winn represented to plaintiffs that it was advisable to await further development in the area, and if a second well was not drilled before the expiration of the first lease, another lease could be acquired on the 120-acre tract and plaintiffs would have the right and opportunity of participating in such lease and the drilling of a second well thereon.

The first lease expired under its own terms on March 17, 1953.

(6) On March 27, 1953, a second lease was obtained from the landowner, Lehman, carrying the same terms as the first lease. It was taken in the names of William H. Forney and Charles C. Winn. There was no drilling under this lease, and it expired by its own terms in 60 days.

(7) The partnership of Forney & Winn was dissolved on November 1, 1953, which was confirmed in writing on December 1, 1953. The effect of this dissolution will be discussed when we take up the appeal of Forney.

(8) On April 8, 1954, C. C. Winn obtained a third lease on the same 120-acre Lehman Tract. This lease was similar to the first two leases, with the exception that it had a 45-day instead of 60-day primary term. On June 6, 1954, Winn completed a producing well on this lease. He did not give the plaintiffs an opportunity to participate in the drilling of the well.

(9) The following three issues were submitted to the jury as to each of the plaintiffs, and answered favorably to all of them except Cerf Ross and Jean Ross, who had not paid the money they had agreed to pay in their letter contracts:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that before the expiration of the first lease on March 17, 1953, that William H. Forney and C. C. Winn or one of them represented to the Plaintiff, Dr. C. L. Concklin, that it was advisable to await further development in the area and if a second well was not drilled before the expiration of the first lease, another lease could be acquired on such 120 acre tract and he would have the right and opportunity of participating in such lease and the drilling of a second well thereunder?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the above Special Issue 'Yes', then answer the following Special Issue; otherwise, you need not answer the same.

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that the Plaintiff, Dr. C. L. Concklin, relied upon such representation?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the above Special Issue 'Yes', then answer the following Special Issue; otherwise you need not answer the same.

"Special Issue No. 3:

"Do you find from a preponderance of the evidence that when C. C. Winn acquired the third lease on such 120 acre tract under date of April 8, 1954, that the Plaintiff, Dr. C. L. Concklin, would have been ready, willing and able to participate in the drilling and development of such tract had the opportunity been extended to him?

"Answer 'Yes' or 'No.'

"Answer: Yes."

We will first discuss the appeal taken by C. C. Winn. The plaintiffs based their cause of action to impress a constructive trust on the oil and gas lease obtained by C. C. Winn on the 120-acre tract dated April 8, 1954, upon the contention that there existed a confidential or fiduciary relation between them and Winn on June 6, 1954, which precluded him from acquiring this lease in his individual capacity, and that in good conscience he was required to act for the benefit of the plaintiffs as well as for himself. This fiduciary relation was based upon the contention that there existed between the parties a mining partnership, a joint venture, or

some other relation requiring the utmost good faith on the part of C. C. Winn in dealing with this 120-acre tract.

The first question presented is whether such a confidential relation actually existed between C. C. Winn, on the one hand, and the plaintiffs, on the other, at the time he obtained the lease on June 6, 1954. If there was a mining partnership, joint venture or any other confidential relation existing, it must have arisen by virtue of the letter contract held by each plaintiff. There was no joint contract between Forney & Winn, on the one hand, and the eleven plaintiffs, on the other, but each plaintiff had a separate written contract with the partnership of Forney & Winn. It is plain from the reading of the letter contract that Forney & Winn was selling to each plaintiff, for a money consideration, a fractional interest in the well they were to commence drilling on December 7, 1952. Forney & Winn agreed to drill this well to a depth of 4,560 feet, unless production was encountered at a lesser depth. Forney & Winn were to keep a log and furnish plaintiffs certain information. Forney & Winn were the operators of the lease and had the exclusive right to make all decisions with reference to locations, completing and operating. If the well resulted in a dry hole, Forney & Winn had the discretion to determine whether another well would be drilled. Forney and Winn were to bear any and all expenses of drilling the well, the only liability of each plaintiff was to pay the sum of money stated in his letter contract. If production was found, then there were other and different duties of the parties, but as it is undisputed that the well was a dry hole, these duties never came into existence. The evidence was not sufficient to show that a confidential or fiduciary relation existed between Forney and Winn, on the one hand, and the plaintiffs, on the other, after the lease terminated. Transcontinental Oil Co. v. Mid-Kansas Oil Co., 5 Cir., 29 F.2d 323; Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716; Snodgrass v. Kelley, Tex.Civ.App., 141 S.W.2d 381.

Furthermore, the burden was upon plaintiffs to have the question of a fiduciary relation submitted to the jury and secure a finding that such fiduciary relation did in fact exist. The matter was not submitted to the jury, nor any request made therefor, and as it was not established conclusively by the evidence, the plaintiffs can not support the judgment of the trial court upon the theory that a fiduciary relation existed between Forney & Winn and themselves. The question which was submitted to the jury in no way included the question of a fiduciary relation.

The jury did find that after the well was drilled in keeping with the letter contract, and after Forney and Winn had done all that was required of them under such contract, Forney and Winn stated to each of the plaintiffs, "that it was advisable to await further development in the area and if a second well was not drilled before the expiration of the first lease, another lease could be acquired on such 120 acre tract and he would have the right and opportunity of participating in such lease and the drilling of a second well thereunder." This oral statement was not binding as a contract, because it related to the conveyance of an interest in land and was not in writing. It was unsupported by any consideration, and was lacking in mutuality, being wholly unilateral and a mere option. It violates the statute of conveyances. If anything, it is an expressed trust in violation of the Texas Trust Act, Art. 7425b–7. See 3 Bogert, Trusts & Trustees, § 488, pp. 130–132; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W. 2d 256; Sevine v. Heissner, 148 Tex. 345, 224 S.W.2d 184; Coffield v. Sorrells, 144 Tex. 31, 187 S.W.2d 980; Calvert v. Greene, Tex.Civ.App., 326 S.W.2d 592.

There was no contention that the lease was to be taken in the names of the plaintiffs. It was in fact understood that the lease would not be taken in the name of

the plaintiffs. The promise which plaintiffs allege Winn violated was that he did not give them a chance to exercise an option to buy a fractional interest in any well that might be drilled under any future lease upon this 120-acre tract. Winn's failure to give plaintiffs an opportunity to purchase a fractional interest in a subsequent well was, if anything, a breach of an oral contract.

■ When the dry hole was completed and Forney and Winn decided not to drill another well under the original lease, there was nothing the plaintiffs could do but wait for the lease to expire in 90 days. They had no right to drill a well themselves. Forney and Winn were the sole operators of the lease.

It is true that after the drilling of the dry hole, and after Forney and Winn had decided not to drill another well, they executed assignments of fractional interests in the lease and mailed these assignments to all of the plaintiffs, except the Rosses who had not paid the money they had agreed to pay in their letter contracts. There is no evidence that these assignments were accepted by the plaintiffs in any way, and certainly not as changing the effect of the letter contracts. No one secured a renewal of this lease until after it had terminated by its own terms. After it terminated the owner of the land was free to execute a new lease to anyone including Winn. Winn had a right to obtain a new lease in his own name, and, according to the finding of the jury, he agreed to give plaintiffs an opportunity to buy a fractional interest in any well he might decide to drill upon the lease at some future date. A violation of this promise will not support the impressing of a constructive trust upon the lease. *Fitz-Gerald v. Hull, supra; Calvert v. Greene, supra.*

Plaintiffs gave up nothing for this promise. They had no right to drill a second well. Under the first lease there was nothing they could have done to preserve their rights, had the promise not been made. The lease was sure to terminate 90 days after the dry hole was completed and there was nothing they could do to prevent it. The promise found by the jury did not cause plaintiffs to act to their own harm, or to fail to do something that would have protected their rights. If the plaintiffs would have acted differently but for the promise, this record does not show what they would have done. The record does not show that Winn did not intend to give plaintiffs an option at the time he made the promise.

■ Constructive trust is based upon fraud and no fraud is here shown. At most, all that is shown is a breach of a promise to permit plaintiffs to participate in the drilling of a well in the event one should be drilled under a new lease.

Plaintiffs rely very strongly upon the case of *MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334, Id., Tex.Civ.App., 193 S.W.2d 287, and *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256. In the Follett case one of the joint owners of an over-riding royalty under an oil and gas lease secured a renewal of the lease in which he became the owner of the interest theretofore held by his former joint-owner. He did this before the original lease expired. In the case at bar, Winn secured the new lease about a year after the original lease had expired, and after the landowner had offered the new lease to a number of persons. In the Follett case the Court went no further than to hold that an issue of fact was raised by the evidence. If the evidence in the case at bar went far enough to raise an issue of fact, it was waived by the plaintiffs by their failure to ask that such issue be submitted to the jury. Winn excepted to the charge because such issue was not submitted.

In the Fitz-Gerald v. Hull case the defendant was to secure the oil and gas lease and take it in the name of himself and plaintiffs, but defendant perpetrated a fraud upon plaintiffs by taking the lease in his own name. Plaintiffs were to pay

their share of the cost of the lease. Here the understanding was, in effect, that the lease was not to be taken in the name of the plaintiffs, neither were they to pay any of the costs of procuring the lease. They were only promised an opportunity to invest in any well to be drilled on the lease, and they were free to take or refuse the option. It was the violation of this agreement to extend to them this option that the plaintiffs are complaining about.

This Court, speaking through Associate Justice Barrow, in Calvert v. Greene, Tex. Civ.App., 326 S.W.2d 592, 593, said:

"In determining the question of whether this case is a suit for title to real estate, or one for breach of a contract for the conveyance of real estate, or a suit for specific performance, the test is whether the agreement alleged was one in which title was to be taken in the names of both plaintiff and defendants, or was one in which title was to be taken in the names of defendants, and they in turn agreed to convey an interest therein to plaintiff. In the first case the agreement vests a present interest in the title to land in plaintiff, and is a suit for land, within the provisions of Subd. 14, Art. 1995, Vernon's Ann.Civ.Stats. In the second case it is a suit for breach of contract or specific performance and may not be maintained in the county in which the land is situated, under such subdivision. Cowden v. Cowden, supra [143 Tex. 446, 186 S.W. 2d 69]; Brown v. Gilmore, supra [Tex.Civ.App., 267 S.W.2d 908]; Cree v. Cluck, supra [Tex.Civ.App., 246 S.W.2d 337]; Klein v. Sibley, supra [Tex.Civ.App., 203 S.W.2d 239]; Robinson v. O'Keefe, supra [Tex.Civ.App., 107 S.W.2d 419]."

Thus we come to the appeal of Forney against Winn.

William H. Forney has appealed among other things from that part of the judgment which denies to him any recovery of an undivided interest in the lease secured by C. C. Winn in his own name upon the 120-acre Lehman Tract on or about April 8, 1954. Prior to the obtaining of this lease the partnership of Forney & Winn had been dissolved. Forney and Winn by oral agreement on November 1, 1953, dissolved their partnership and confirmed such dissolution by written agreement dated December 1, 1953. At the time of this dissolution there was no lease in existence on the 120-acre Lehman Tract in which either Forney or Winn had any interest.

The jury found in response to Special Issue No. 36, that upon the dissolution of the general partnership of Forney & Winn that William H. Forney and C. C. Winn agreed that the acquisition of any leases on land owned by W. F. L. Lehman in the London Gin area or farmouts or dry hole contributions in connection therewith would be held and acquired by them jointly with each having the right to jointly participate with the other. The trial court granted Winn's motion for judgment non obstante veredicto and rendered judgment that Forney take nothing against Winn.

The written agreement of dissolution reads as follows:

"The State of Texas,
County of Bexar.

"Know All Men By These Presents:

"Whereas, the undersigned, William H. Forney and Charles C. Winn, have heretofore been engaged in the oil business as partners under the firm name of 'Forney & Winn' and during their association they have acquired various leasehold, mineral and royalty interests in various properties in several counties in the State of Texas and elsewhere and have likewise acquired interests in personal property and equipment situated on or used and obtained in connection with such properties; and

"Whereas, said leasehold and other interests acquired by said partnership were variously taken and acquired in the names

of 'Forney & Winn', 'Forney & Winn, a co-partnership composed of William H. Forney and Charles C. Winn' and 'William H. Forney and Charles C. Winn' or 'Charles C. Winn and William H. Forney'; and,

"Whereas, said partnership of Forney & Winn was by mutual consent of said partners dissolved as of November 1, 1953, at which time all of the properties, leasehold or otherwise, which appeared of record in the various counties in the State of Texas and elsewhere in the various names above listed was jointly owned by William H. Forney and Charles C. Winn and upon such dissolution, each of said parties was and is entitled individually to his fifty (50%) per cent interest in any such leasehold, mineral, royalty or personal property,

"Now, therefore, for and in consideration of the premises and One Dollar ($1.00) each to the other in hand paid, receipt of which is hereby acknowledged, we, the undersigned William H. Forney and Charles C. Winn, do hereby recognize that each of us own as of November 1, 1953, an undivided one-half (½) interest in and to any such properties appearing of record in any of the names above set forth and to this extent, each of us do quitclaim and relinquish to the other an undivided one/half (½) interest in and to said leasehold, mineral and royalty interests and in the personal property or interests therein heretofore owned and acquired by us as partners.

"Executed this 1st day of December, 1953.
"/s/ William H. Forney
/s/ Charles C. Winn"

 It is uncontradicted that at the time Winn secured the lease from Lehman on April 8, 1954, that both the prior lease and the partnership had terminated, that Forney and Winn had ceased to be partners, and had ceased to be joint owners of any lease on the 120-acre Lehman Tract. The testimony of Forney, that at the time he and Winn signed the dissolution agreement of the partnership, it was understood that they were to remain partners in the Lehman land in the London Gin Area was an attempt on the part of Forney to vary by parol testimony the terms of the written agreement terminating the partnership and was ineffective to show that the agreement did not dissolve their partnership as to the Lehman land located in the London Gin Area.

If Forney's testimony had any effect whatever, it was an attempt to create an expressed trust in the 120-acre Lehman Tract by parol testimony in violation of the provisions of the Texas Trust Act. Art. 7425b–7, Vernon's Ann.Civ.Stats.

That part of the judgment denying Forney any recovery against Winn is affirmed.

That part of the judgment granting the plaintiffs a recovery against Winn is reversed and judgment here rendered that they take nothing, and that all costs be taxed against the plaintiffs and Forney.

Affirmed in part, reversed and rendered in part.